451 A.2d 1035

**COMMONWEALTH of Pennsylvania**

v.

**Johnnie BRADFORD, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 21, 1981.

Filed Oct. 22, 1982.

Petition for Allowance of Appeal Denied Feb. 7, 1983.

594

Larry A. Kalikow, Assistant Public Defender, Harrisburg, for appellant.

William A. Behe, Deputy District Attorney, Harrisburg, for Commonwealth, appellee.

Before BROSKY, McEWEN and BECK, JJ.

McEWEN, Judge:

We here consider an appeal from a judgment of sentence imposed after the appellant was found guilty of robbery, following a non-jury trial, and sentenced to serve a term of imprisonment of not less than sixteen months nor more than seven years. Appellant argues that the trial judge should not have permitted identification testimony from two witnesses since that testimony was the product of an impermissibly suggestive pre-arrest identification procedure. We affirm.

The victim of the robbery testified that a man snatched her pocketbook as she walked out of an underpass in downtown Harrisburg at approximately 9:00 a.m. She got a "good look at a profile", including a look at his forehead, cheeks, chin and one eye. While she engaged in a screaming pursuit of the offender for several minutes, she was able to observe the facial characteristics for three to four seconds.

A second identification witness, who had been attracted to the crime by the screams of the victim, testified that while he ran toward the scene he had an opportunity to observe the face of the robber. This witness testified that he observed the face of the assailant on two separate occasions for a minimum total of from eight to ten seconds. Appellant testified that he was not in any way involved and that he was not even in the area of the crime.

The record reflects that the detective assigned to the investigation displayed a single photograph to each of the two witnesses on separate occasions shortly after the robbery. When the police displayed the photograph of appellant to the victim two days after the crime, the victim indicated that her observation of the offender had been a view of his profile and since the photograph was a front facial picture, she could not positively identify appellant from the photograph. At the subsequent preliminary hearing nineteen days after the occurrence, the victim indicated that while appellant had less hair than the robber, she testified that he was the right size, had the right build and possessed almost identical features as her assailant. At the time of the trial, five months after the occurrence, the victim provided a positive identification of appellant as the robber. The other eyewitness identified the photograph of appellant as the robber when the witness viewed the photograph nine days after the occurrence, and this witness made a positive identification of the appellant at both the preliminary hearing and at the trial.

The appellant contends that the detective engaged in a highly suggestive and, therefore, impermissible pre-arrest identification procedure that should have compelled the suppression of any subsequent court room identification. The appellant, for that reason, filed a motion to suppress identification testimony. The learned Dauphin County Common Pleas Court Judge Warren G. Morgan, by order of April 14, 1980, denied the motion of appellant to suppress that evidence after ruling, "That the in-court identification of the defendant was not the product of an illegal procedure."

That ruling appears to (1) provide approval of the identification that had been made by the victim and the eyewitness at the preliminary hearing and (2) serve as a refusal to suppress such identification testimony at the trial itself. Following his conviction, appellant reasserted his suppression claim in the motion for new trial. This motion was denied by the distinguished Dauphin County Common Pleas Court Judge William W. Lipsitt on the basis of the Memorandum Opinion of Judge Morgan, who had conducted the

suppression hearing and who had entered the order denying the motion to suppress the identification testimony.

■ We deplore the single photograph procedure utilized by the police officer in this case. The display of a single photograph to a witness by the police in this case was a clearly suggestive procedure. *See Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *United States v. Milhollan,* 599 F.2d 518 (3rd Cir.1979). It does not necessarily follow that a suggestive pre-trial identification procedure renders a trial identification inadmissible. But such suggestive conduct by the police does create a further burden upon the Commonwealth, namely, a duty to fulfill the condition precedent described in *Commonwealth v. Fowler,* 466 Pa. 198, 203, 352 A.2d 17, 19 (1976):

> Following a suggestive pre-trial identification procedure, a witness should not be permitted to make an in court identification unless the prosecution establishes by clear and convincing evidence that the totality of the circumstances affecting the witness's identification did not involve a substantial likelihood of misidentification. (citations omitted).

It is thus clear that the totality of the circumstances must not reflect the likelihood of misidentification and also clear that the Commonwealth has the burden of so proving. The Pennsylvania Supreme Court proceeded in *Fowler, supra,* to describe the study that the court must conduct as it determines whether the Commonwealth has met that burden:

> A consideration of the totality of the circumstances requires a close examination of (1) the suggestive factors involved in the identification process, and (2) whether or not, despite the suggestive factors involved in the process, other factors are present which clearly and convincingly establish that the witness's identification has an "independent origin" in the witness's observations at the time of the crime. (citations omitted). *Id.,* 466 Pa. at 204, 352 A.2d at 20.

■ The treatise upon this area of the law provided by our Supreme Court in *Fowler, supra,* included a reiteration of

the factors that had earlier been expressed by the United States Supreme Court and the Third Circuit Court of Appeals as the criteria for consideration in the determination of whether the identification was reliable. *See Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *United States v. Higgins,* 458 F.2d 461 (3rd Cir.1972). Those criteria may be summarized as follows:

(1) the opportunity of the witness to view the criminal at the time of the crime; (2) the degree of attention of the witness; (3) the existence of any discrepancies between the actual description of the defendant and the description supplied by the witness prior to the confrontation or photographic identification; (4) the manner in which the pre-trial identification was conducted; (5) any previous identification by the witness of some other person; (6) any previous identification of the defendant himself; (7) the level of certainty, including any failure, demonstrated by the witness at the time of the identification; and (8) the lapse of time between the crime and the pre-trial identification.

■ A consideration of the totality of the circumstances in this case leads us to conclude that the identification testimony supplied by the victim at the trial was sufficiently independent of the suggestive pre-trial identification procedure that had been employed by the police. The most important factor in the totality test is the opportunity of a witness to view the suspect at the time of the crime, *Commonwealth v. Davis,* 293 Pa.Super. 447, 439 A.2d 195 (1981), and we note that in the instant case the victim was able to view the suspect at the time of the crime and did so at close range, at the brink of the underpass that was illuminated by sunlight.

Whenever the victim of a crime has an opportunity to observe the criminal, the impression of the face of an assailant is etched upon the prey by the terror of the occasion; in addition, in this instance, the victim was an artist by profession, so that the victim here would be by training and reflex, if not by instinct, devoted to detail.

Nor was the opportunity of the victim to observe her assailant restricted to the commission of the crime since the culprit continually glanced over his shoulder at the victim as she pursued him. We recognize that the victim did not positively identify appellant when she was shown his picture but are mindful that the victim had not during the crime and pursuit observed appellant from the front facial angle displayed in the photograph; we further realize that the victim could not positively identify appellant at the preliminary hearing but are mindful that the victim testified that appellant was the right size, the right build and possessed almost identical facial features of her assailant, although the appellant had less hair than the robber.

We also conclude that the identification by the other witness of appellant as the individual he pursued at the time of the crime had an independent origin in the observations he made at the time of the crime. He too had the opportunity to view the face of the perpetrator at the time of the robbery and did so without obstruction for at least eight to ten seconds on a clear morning. The view of this witness was face-on at a distance of about thirty to forty yards while the assailant fled the scene and ran in the direction of the witness; and when the appellant changed course, the witness continued to chase for an additional forty to fifty yards during which the witness saw the face of appellant as he glanced behind his pursuer.

Appellant asserts that neither witness observed the perpetrator for such a sufficient amount of time that would enable a certain identification. The total description of the opportunity that each of the two witnesses in this case had to observe the appellant makes clear that the length of time that the opportunity lasts is but one factor to be considered in a determination of whether there was an adequate opportunity to view the culprit. We conclude that each witness did have an adequate opportunity that was sufficient to enable them to identify the perpetrator.

While it is true that the Commonwealth failed to present evidence concerning the comparisons between the actual physical characteristics of the appellant and the descriptions

supplied after the incident by the victim and by the witness, we also note that this issue was not explored by the defense.

The facts in the instant case are analogous to those present in *Commonwealth v. Townsend,* 280 Pa.Super. 155, 421 A.2d 452 (1980). In *Townsend,* this Court held that the identification was admissible even though the witness viewed the criminal for only a matter of seconds. The *Townsend* Court relied on the following facts: the witness viewed the criminal from a short distance without obstruction; the attention of the witness was drawn to the events by the screams of the victim; the confrontation occurred within one day of the crime; and the witness was certain and did not hesitate in her identification. The *Townsend* Court held that the Commonwealth had met its burden of proving independent source for the identification, notwithstanding the fact that the description given by the witness to the police was general.

In the instant case, we determine from a review of the relevant factors that the in-court identification by the witness did not involve a substantial likelihood of misidentification. Our analysis of the facts in the instant case and the applicable law leads us to conclude that the trial court did not err when it denied the motion of the appellant to suppress the identification of the witnesses.

Judgment of sentence affirmed.