457 A.2d 531

**COMMONWEALTH of Pennsylvania**

**v.**

**Jeffrey SPIEGEL, Appellant.**

Superior Court of Pennsylvania.

Submitted Sept. 9, 1981.

Filed Feb. 25, 1983.

Petition for Allowance of Appeal Denied Sept. 7, 1983.

136

Frank R. Bartle, Lansdale, for appellant.

Stephen B. Harris, Assistant District Attorney, Doylestown, for Commonwealth, appellee.

Before HESTER, McEWEN and CIRILLO, JJ.

McEWEN, Judge:

We here consider an appeal from the judgment of sentence imposed after appellant was convicted by a jury of robbery, theft, possession of instruments of crime and conspiracy and sentenced to a term of imprisonment of from six to twelve years. We affirm.

The conviction of appellant arose out of an incident which occurred when appellant and his co-defendant, Richard Whittall, broke into a Bucks County apartment, occupied by a husband and wife, by prying open the door with a screwdriver. The robbers threatened both victims verbally while pointing a shotgun at them, bound their hands and feet and forced them to lie on their faces in the living room of the apartment. While both assailants were described as caucasian males, one was said to be "extremely large, like a lot of fat and [with] very, very large hands", wearing a black ski cap pulled down over his face but allowing a view of his chin with a growth of reddish blond stubble; the other assailant was described as a slender dark-haired individual who was smaller than the other man, with a small mustache and without a mask. The larger of the two men, Whittall, was described as the leader who bound the hands and feet of the victims and stood guard over them with a shotgun while appellant searched for and gathered money and jewelry throughout the apartment. The entire occurrence lasted approximately one hour. It was the larger man who issued a warning as they departed that the victims should not report the incident.

The male victim subsequently identified appellant in two separate photographic arrays, one conducted several days after the robbery and the other one day prior to the preliminary hearing. The woman was unable to identify appellant at the first photographic array but when, at the subsequent array, she was shown a picture of appellant in which his hair was shorter and more closely resembled the hair style of the shorter of the two men, she then identified appellant. Both victims identified appellant as well as Whittall at the preliminary hearing as the individuals who

perpetrated the robbery. Both victims also testified that on the day before trial they positively identified appellant during a six man physical lineup in the office of the prosecutor on the basis of their recollection of him from the night of the robbery.

The detective who directed the lineup in the office of the Bucks County District Attorney on the day before trial testified that both victims individually identified appellant from a group of six subjects as one of the individuals who committed the robbery. He further testified that counsel for appellant was present during the individual identification by each of the victims.

Three other witnesses for the Commonwealth offered testimony as to the complicity of appellant in the occurrences. One testified that shortly before 6 p.m. on the same evening as the robbery in the instant case, while visiting at the home of her sister in the Mount Airy section of Philadelphia, she and her relatives were also the victims of a robbery. She described the intruders as two men, one dark-haired with a trimmed black mustache and the other a heavy set man with very large hands and blond hair on his arms; she testified that like the victims in the Bucks County robbery, she and her relatives were forced to lie face down and were bound hand and foot by the heavy man who stood guard over them while the smaller man gathered the loot throughout the house. She further testified that the heavy set man stated that "you people were just not lucky" and indicated that they were not the intended victims of this robbery. (N.T. p. 166). This witness identified both co-defendant Whittall and appellant Spiegel during her testimony as the perpetrators of the Mount Airy robbery.

A further Commonwealth witness testified that he was acquainted with both appellant and co-defendant Whittall and was in their company during the afternoon and evening of the date of the robberies. He testified that he joined both individuals in Levittown, was with the two of them in the Mount Airy section of Philadelphia at approximately 6 p.m. and travelled with them to the home of co-defendant

Whittall's mother in Levittown. He stated that on the day of the robbery appellant had short hair, was of the same build, wore a mustache but no beard and that the co-defendant of appellant had one or more inches of reddish brown beard and was wearing a dark wool hat. This companion further testified that he remained at the home of the mother of Whittall from approximately 11:00 p.m. until 12:30 a.m. when the other two returned there.

A Philadelphia Police Department Detective testified that he conducted the search of the Whittall residence, pursuant to a search warrant, four days after the robbery and uncovered a number of items connected with the robbery of the Bucks County residence as well as the robbery of the Mount Airy home. The items recovered included identification cards, passports, credit cards and jewelry belonging to the victims of the two robberies. It was also established that the Whittall residence was located approximately three to four miles from the Bucks County apartment occupied by the victims in this case.

■ Appellant initially argues that the charges against him must be dismissed for the reason that the district attorney failed to sign the informations lodging charges against him in violation of Pa.R.Crim.P. 225(b). He argues that: (1) this defect renders the informations void ab initio; (2) such a challenge to the validity of the information cannot be waived; and (3) all procedures and actions conducted pursuant to such unsigned bills of information are nullities and, therefore, the charges against him must be dismissed. We disagree. Counsel for appellant failed to raise this argument in either his pretrial application or in post-trial motions and did not express this objection until the time originally set for sentencing.

We recently held in *Commonwealth v. Veneri*, 306 Pa. Super. 396, 452 A.2d 784 (1982), that the signature requirement of Pa.R.Crim.P. 225(b) is directory only, that the absence of a signature renders an information merely voidable and that the defect is curable by amendment, if properly raised in a pretrial motion to quash, pursuant to Pa.R.

Crim.P. 306. Therefore, we conclude that appellant, by failing to raise the validity of the unsigned information in a pretrial motion, has waived this issue.

■ Appellant additionally contends that trial counsel was ineffective by reason of a failure to request dismissal of the charges since the bills of information were not signed in accordance with Pa.R.Crim.P. 225(b). We concluded in *Commonwealth v. Veneri, supra,* that once the Commonwealth has begun to support the charges alleged in the informations by proof at trial or where the defendant stands convicted, the right to seek dismissal of the charges for lack of a signature no longer exists and, thus, cannot be asserted by way of a collateral attack alleging ineffective assistance of counsel. Since there is no longer any merit to the claim at this stage of the proceedings, there can be no showing of ineffectiveness. *See Commonwealth v. Veneri, supra.*

Appellant further argues that the trial court erred in admitting evidence of the robbery committed by appellant and Whittall earlier the same day in Philadelphia since appellant had not, at the time of trial, been convicted of that robbery.

"It is well established that evidence of other criminal activity generally is inadmissible against the defendant at his trial on another charge. *Commonwealth v. Roman,* 465 Pa. 515, 351 A.2d 214 (1976); *Commonwealth v. Groce,* 452 Pa. 15, 303 A.2d 917 (1973)." *Commonwealth v. Martinez,* 301 Pa.Super. 121, 124, 447 A.2d 272, 273 (1982) (quoting *Commonwealth v. Stokes,* 279 Pa.Super. 361, 371, 421 A.2d 240, 245 (1980)). "The rule stems from a recognition that evidence of other crimes is likely to prejudice the finder of fact and create an emotional reaction effectually stripping the accused of the presumption of innocence because proving commission of one crime does not entail proof of another, but merely bad character which cannot support an inference of guilt." *Commonwealth v. Hawkins,* 295 Pa.Super. 429, 437, 441 A.2d 1308, 1311 (1981); *See e.g. Commonwealth v. Spruill,* 480 Pa. 601, 391 A.2d 1048

(1978); *Commonwealth v. Roman, supra.* However, under certain circumstances which constitute exceptions to the general rule, evidence of other crimes is admissible when it tends to prove:

> (1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme plan, or design embracing the commission of two or more crimes so related to each other that proof of one tends to prove the others; or (5) the identity of the person charged with the crime on trial. In other words, evidence of a prior criminal act is admissible where there is a logical connection between the prior criminal act and the crime currently on trial that proof of one naturally tends to show that the accused is the person who committed the other.

*Commonwealth v. Westerfer,* 294 Pa.Super. 459, 463, 440 A.2d 556, 558 (1982) (quoting *Commonwealth v. Brown,* 280 Pa.Super. 303, 307, 421 A.2d 734, 736 (1980)); *See also Commonwealth v. Fortune,* 464 Pa. 367, 346 A.2d 783 (1975); *Commonwealth v. Peterson,* 453 Pa. 187, 307 A.2d 264 (1973); *Commonwealth v. Foose,* 441 Pa. 173, 272 A.2d 452 (1971); *Commonwealth v. Wable,* 382 Pa. 80, 114 A.2d 334 (1955). "Even when one of these exceptions applies, however, the trial court must still balance the need for the other crimes evidence against the potential prejudice to the accused." *Commonwealth v. Hawkins, supra* 295 Pa.Super. at 437, 441 A.2d at 1312; *See Commonwealth v. Ulatoski,* 472 Pa. 53, 63 n. 11, 371 A.2d 186, 191 n. 11 (1977); *Commonwealth v. Hude,* 256 Pa.Super. 439, 445, 390 A.2d 183, 190 (1978).

■ Appellant contends that the evidence admitted in the instant case does not fall within any of the exceptions to the general rule; specifically he claims that the testimony presented concerning the robbery in Mount Airy does not indicate the existence of a common scheme, plan or design since there was nothing so unusual or distinctive about the two crimes as to logically connect them to one another. Absent any showing of a logical connection between the two crimes, appellant contends that the evidence of the

Mount Airy robbery was not properly admissible to establish his identity alone. We disagree. While there were some dissimilarities between the two crimes, e.g., (1) the fact that in the Mount Airy robbery neither of the men were masked; and (2) that the items taken in each robbery were somewhat different, we believe that the two residential robberies shared sufficient similarities to establish a common scheme or plan. It is immediately clear that the modus operandi in each robbery was nearly identical: (1) two men entered each residence unannounced; (2) in each occurrence one robber was described as very large and the other as of average size; (3) the larger of the two men did most of the talking; (4) the victims in each robbery were bound hands and feet by the larger man and ordered to lie face down; (5) the larger man stood guard over the victims of each robbery while the shorter man searched the residence and gathered valuables; (6) the intruders concentrated primarily on jewelry and money as well as credit and identification cards; (7) the conspirators made remarks during each incident that the victims were simply unlucky because other parties had been the original targets of robbery. Moreover, the two offenses were committed on the same day within six hours of each other and, more significantly still, some of the items which were taken in both robberies were discovered after a search of the residence of co-defendant Whittall. We believe that the evidence of the robbery which took place in Mount Airy was so closely linked to the Bucks County robbery that it was sufficient to establish a common scheme or plan embracing the commission of both robberies and that the modus operandi in each was so distinctive that proof of one tended to prove the other.[1]

Finally, appellant argues that trial counsel was ineffective by reason of a failure to file a motion to suppress the identifications made by the Bucks County victims. Appel-

1. In light of our decision we need not decide whether the other crimes evidence was also admissible under the identity exception although it would seem to be admissible. *See Commonwealth v. Lee*, 297 Pa.Super. 216, 226 n. *, 443 A.2d 804, 808 n. * (1982), *McCormick, Evidence* § 190 (2nd Ed.1972).

lant asserts that it was not possible to determine whether the two pretrial photographic arrays were impermissibly suggestive and, if so, whether they caused the in court identifications of the victims to be tainted, in the absence of a suppression hearing upon those identifications. We find no merit to this argument, since our review of the record persuades us that such a motion would have been futile.

■ Even if the photographic array had been suggestive, a proposition of some considerable question, it does not necessarily follow that the trial identifications were thereby rendered inadmissible since we employ a totality of the circumstances approach to determine whether a questioned identification is reliable. *Commonwealth v. Satchell*, 306 Pa.Super. 364, 452 A.2d 768 (1982). We stated in *Commonwealth v. Bradford*, 305 Pa.Super. 593, 451 A.2d 1035 (1982), that:

> A consideration of the totality of the circumstances requires a close examination of (1) the suggestive factors involved in an identification process and (2) whether or not, despite the suggestive factors involved in the process, other factors are present which clearly and convincingly establish that the witness' identification has an 'independent origin' in the witness' observations at the time of the crime. (citations omitted). *Id.*, 305 Pa.Superior at 597, 451 A.2d at 1037, quoting *Commonwealth v. Fowler*, 466 Pa. 198, 204, 352 A.2d 17, 20 (1976).

The suggestiveness of a challenged identification is only one factor to be considered in determining the admissibility of identification testimony. Suggestiveness alone does not warrant exclusion." *Commonwealth v. Ransome*, 485 Pa. 490, 495, 402 A.2d 1379, 1382 (1979). Rather, "it is the likelihood of misidentification which violates a defendant's right to due process, and it is this which is the basis for the exclusion of [the] evidence." *Id.*, quoting *Commonwealth v. Sexton*, 485 Pa. 17, 22, 400 A.2d 1289, 1291 (1979) and *Neil v. Biggers*, 409 U.S. 188, 198, 93 S.Ct. 375, 381, 34 L.Ed.2d 401, 410–411 (1972). The Commonwealth has the burden of establishing by clear and convincing evidence

that "the totality of the circumstances affecting the witness' identification did not involve a substantial likelihood of misidentification." *Commonwealth v. Fowler, supra* 466 Pa. at 203, 352 A.2d at 19; *Neil v. Biggers, supra.* In evaluating the totality of the circumstances and in making this determination, we must consider the following factors:

the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself.

*Manson v. Brathwaite,* 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140, 154 (1977); *Commonwealth v. Ransome,* 485 Pa. 490, 496, 402 A.2d 1379, 1382 (1979).

The most important factor in the totality of the circumstances test is the opportunity of the witness to view the suspect at the time of the crime. *Commonwealth v. Davis,* 293 Pa.Super. 447, 439 A.2d 195 (1981). This would seem to be particularly so when the witness was the victim, for as we have recently noted, "[w]henever a victim of a crime has an opportunity to observe the criminal, the impression of the face of an assailant is etched upon the prey by the terror of the occasion...." *Commonwealth v. Bradford,* 305 Pa.Super. 593, 598, 451 A.2d 1035, 1037 (1982).

The testimony of the two victims of the instant robbery indicates that each victim had a more than ample opportunity to view appellant under a condition of good lighting in the apartment at various times during the period of approximately one hour which the perpetrators took to complete the crime. Both victims provided the authorities with detailed and accurate descriptions of appellant. We further note that appellant was not, unlike his codefendant, Whittall, wearing a mask on the night of the robbery. We conclude, therefore, that the identification of appellant provided at trial by each victim had an independent origin in the observations of each witness at the time of the crime.

146

Thus, even if the unchallenged photographic arrays had been suggestive—a conclusion without support in the record—under the totality of the circumstances test, there was no likelihood of misidentification. *See Neil v. Biggers, supra; Commonwealth v. Fowler, supra; Commonwealth v. Bradford, supra; Commonwealth v. Williams*, 274 Pa. Super. 464, 418 A.2d 499 (1980).

Since our review of the totality of the circumstances makes clear that the identifications of each victim had an independent basis and involved no substantial likelihood of misidentification, it would have been futile for counsel for appellant to have filed a motion to suppress the identifications. This conclusion is confirmed by the fact that each victim independently identified appellant as one of the robbers in a certain and unhesitating fashion during a pre-trial physical lineup—a lineup witnessed by counsel for appellant. Therefore, counsel for appellant cannot be deemed to have been ineffective for declining to file such a motion for, where the argument underlying the ineffective assistance of counsel claim is without merit, there can be no showing of ineffectiveness. *See Commonwealth v. Brown*, 489 Pa. 285, 414 A.2d 70 (1980); *Commonwealth v. Ransome, supra*.

Judgment of sentence affirmed.