J-S44009-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| CHRISTOPHER L. FREEMAN, | |
| Appellant | No. 1565 WDA 2013 |

Appeal from the PCRA Order Entered September 6, 2013
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0012372-2010

BEFORE: BENDER, P.J.E., LAZARUS, J., and OTT, J.

MEMORANDUM BY BENDER, P.J.E.: **FILED SEPTEMBER 11, 2014**

Appellant, Christopher L. Freeman, appeals *pro se* from the order entered on September 6, 2013, dismissing his petition filed pursuant to the Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546. After careful review, we vacate the order and remand for further proceedings.

The trial court set forth the facts underlying Appellant's conviction in its opinion filed at the time of his direct appeal as follows:

> Tyler Walk testified at trial that he and Megan Seastedt were walking on July 14, 2010 near the West End Overlook park in the city of Pittsburgh at approximately 9:00 p.m. As they were walking together, they noticed a male walk past them and sit on a park bench … in the park. This person was wearing a white t-shirt and a red or dark cap. He had a hairstyle that somewhat resembled "dread locks". They walked toward the tunnel. When they were about a foot away from the male sitting on the bench, the male got up from the bench and pulled a firearm and stuck it against Mr. Walk's abdomen. Mr. Walk did not get a good look at the gun but he recalled seeing a silver streak. The male told Mr. Walk to "give me what you got." Ms.

Seastedt said "Oh my God" and stepped behind Mr. Walk. Mr. Walk turned over a business card holder and his wallet. Another male came from behind Mr. Walk and patted his pockets. Mr. Walk recalled that one of the males was carrying a backpack. This other male demanded that Mr. Walk turn over money. Mr. Walk turned over a $20 bill that he found in his pocket. The men appeared disappointed that Mr. Walk didn't have more money. Mr. Walk testified that he got a good look at the male holding the gun. They made direct eye contact. He didn't get a good look at the other male. The two males told Mr. Walk and Ms. Seastedt not to call the police and they disappeared into the park.

Mr. Walk and Ms. Seastedt returned to Mr. Walk's vehicle. Once there, they phoned the police. Police responded to the scene and began searching the area. Police detained two men, [Appellant] and Marlin Fields. Mr. Walk and Ms. Seastedt were asked to identify their assailants. At trial, Mr. Walk identified [Appellant] as the male sitting on the bench that held the gun. Mr. Walk also identified Marlin Fields as the other male. By the time they had been apprehended by the police however, [Appellant] was wearing a long sleeved red t-shirt instead of the shirt he was wearing during the robbery.

On cross-examination, Mr. Walk was asked about the physical description of the males that he provided to the police. Mr. Walk testified that he believed he originally told the police that the male holding the gun was about his height, which would be about 5 feet, 9 inches. He did not recall if he originally supplied an estimated weight for that male. He believed he told police that the male was in his "early twenties."

Ms. Seastedt's testimony was virtually identical to Mr. Walk's testimony. She recalled seeing [Appellant] walk past them, sit on the bench and pull the gun on Mr. Walk. She confirmed that Mr. Walk turned over the wallet, business card holder and the $20 to [Appellant]. She believed [Appellant] was wearing a red cap and he had "dread locks." She testified that she believed the handgun looked more like a revolver than a semi-automatic handgun. She testified that the male who came up behind them during the robbery was wearing a black baseball cap, white t-shirt and dark jeans and he was carrying a backpack. She also recalled that the other male was wearing what appeared to be grey diamond earrings. She testified that [Appellant] told them not to call the cops.

- 2 -

Ms. Seastedt testified that the responding officers also asked her to identify the males they had detained. When they got to the scene, officers asked her if she recognized the backpack they found. She testified that it appeared to be the backpack held by one of the males during the robbery. Ms. Seastedt identified both [Appellant] and the other person during the trial of this case as the persons who robbed Mr. Walk and her.

Officer Causey from the City of Pittsburgh Bureau of Police testified in this case. He explained that he was one of the officers that responded to the scene of the robbery to search the area for a possible suspect. He had been given a description of two black males, in their late teens to early twenties, approximately five feet nine inches and weighing 130 pounds. Officers were told that one of them was wearing a red baseball cap, a white t-shirt and had dread locks. The other male had a black baseball cap, white t-shirt and was carrying a backpack. According to Officer Causey, they encountered two black males that closely fit the descriptions of the males they were seeking. Officer Causey testified that the ages were similar, the hair on one of the actors looked right and the ball caps looked right. He also explained their clothing was close.

[Appellant] was wearing a red cap and was wearing a red shirt with a white shirt under it. The other male was wearing a black baseball cap, a white t-shirt, blue jeans and was carrying a backpack. Officers conducted a search of the area where the suspects were located. They did not find Mr. Walk's wallet, business card case or his $20. Officers did, however, find a black revolver approximately ten to fifteen yards from where the suspects were detained. The gun was loaded and the hammer was pulled back on the gun. Based on this evidence, [Appellant] was convicted as set forth above.

Trial Court Opinion, 12/21/2011, at 1-4.

The Commonwealth charged Appellant with robbery, criminal conspiracy (robbery), and carrying a firearm without a license. Appellant's non-jury trial was held on March 21, 2011, at which time the trial court found him guilty on all counts. On August 22, 2011, the trial court

sentenced Appellant to a term of 5-10 years' incarceration. Appellant filed post-sentence motions on September 1, 2011, which were denied by the trial court on September 7, 2011.

On October 6, 2011, Appellant filed a timely notice of appeal to this Court. In that appeal, Appellant claimed that the trial court abused its discretion when it denied his post-sentence motion alleging that the verdict was against the weight of the evidence. The claim was based upon the quality of the identification evidence. On May 15, 2012, this Court affirmed Appellant's judgment of sentence. *Commonwealth v. Freeman*, 50 A.3d 243 (Pa. Super. 2012) (unpublished memorandum). Appellant did not seek review with our Supreme Court.

Appellant filed a timely, *pro se* PCRA petition on May 9, 2013. The PCRA court appointed Scott Coffey, Esq., to represent him. Attorney Coffey subsequently filed a *Turner*[1]/*Finley*[2] letter (or "no-merit letter") and a motion to withdraw. On August 13, 2013, the PCRA court granted Attorney Coffey's motion to withdraw and issued notice to Appellant of the court's intent to dismiss his PCRA petition without a hearing pursuant to Pa.R.Crim.P. 907. On August 26, 2013, Appellant filed a *pro se* motion titled "Petition to Proceed *Pro Se*," in which he complained of Attorney Coffey's

_____

[1] *Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988).

[2] *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. 1988).

failure to address or raise certain issues in the no-merit letter. The PCRA court then entered an order dismissing Appellant's PCRA petition on September 6, 2013.

Appellant filed a timely *pro se* notice of appeal on September 16, 2013, which was later amended on October 1, 2013. Appellant complied in a timely fashion when the PCRA court ordered him to file a Pa.R.A.P. 1925(b) statement. The trial court issued its Rule 1925(a) opinion on December 4, 2013. Appellant now presents the following questions for our review:

I. Whether the [PCRA] court erred and abused its discretion for failure to comply with Rule 907 and give the Appellant a 20 day "Notice of Intent to Dismiss" [his] [PCRA] petition which also did not include its reasons why [the] petition was dismissed and … why [Appellant was] denied relief by the [PCRA] court?

II. Whether the [PCRA] court committed prejudicial error for failure to comply with Rule 121[(a)(2)(c)], which entitles … Appellant to an on-the-record hearing to see if [he] is competent enough to represent himself, which he [is] also entitled to … under the Sixth Amendment of the Constitution?

III. Whether … trial and appellate counsel [were] ineffective for failure to properly preserve the following issues[:] failure of trial counsel to challenge suggestive identification and failure of appellate counsel to perfect direct appeal, which resulted in both counsel[s'] violating Appellant[']s due process [rights]?

IV. Whether [PCRA] counsel provided ineffective assistance, whether counsel failed to meet the withdraw procedures, which precisely bars counsel to evade his obligation of advocacy …, and the "no-merit" letter criteria was not met, due to counsel['s] deficient performance and for failure to conduct an exhaustive examination to disclose all possible

errors on appeal which is required by the Sixth Amendment of the Constitution?

Appellant's Brief at 4 (unnecessary capitalization omitted).

Our standard of review regarding an order denying a petition under the PCRA is whether the determination of the PCRA court is supported by the evidentiary record and free of legal error. **Commonwealth v. Pitts**, 981 A.2d 875, 878 (Pa. 2009). "This Court grants great deference to the findings of the PCRA court if the record contains any support for those findings." **Commonwealth v. Carr**, 768 A.2d 1164, 1166 (Pa. Super. 2001). We will address Appellant's claims in the order in which they are presented.

Appellant first asserts that the Pa.R.Crim.P. 907 notice provided by the PCRA court was defective because it did not include the reason why the petition was going to be dismissed. Rule 907 provides, in pertinent part, as follows:

> Except as provided in Rule 909 for death penalty cases,
>
> (1) the judge shall promptly review the petition, any answer by the attorney for the Commonwealth, and other matters of record relating to the defendant's claim(s). *If the judge is satisfied from this review that there are no genuine issues concerning any material fact and that the defendant is not entitled to post-conviction collateral relief, and no purpose would be served by any further proceedings, the judge shall give notice to the parties of the intention to dismiss the petition and shall state in the notice the reasons for the dismissal.* The defendant may respond to the proposed dismissal within 20 days of the date of the notice. The judge thereafter shall order the petition dismissed, grant leave to file an amended petition, or direct that the proceedings continue.

Pa.R.Crim.P. 907(1) (emphasis added).

In the present case, the PCRA court issued an order granting Attorney Coffey's motion to withdraw, which included notice of the court's intent to dismiss Appellant's PCRA petition. However, the PCRA court acknowledges that the notice did not "specifically explain[] the reasons for [the PCRA] [c]ourt's intended dismissal." PCRA Court Opinion (PCO), 12/4/13, at 2. Nevertheless, the PCRA court indicates that the notice "clearly referenced the 'No-Merit' letter as the precipitating factor for the entry of the order." *Id.* The entire order reads as follows:

> AND NOW, to-wit, this 13ᵗʰ day of August[,] 2013, it is hereby ORDERED that as appointed counsel has filed a "No-Merit" letter and Petition to Withdraw as Counsel pursuant to ***Pennsylvania v. Finley***, 481 U.S. 551 (1987) and ***Commonwealth v. Turner***, 544 A.2d 927 (Pa. 1988), it is hereby ordered that the Petition to Withdraw as Counsel is GRANTED and the Petitioner is put on notice that the Court intends to dismiss Petition's Application for Post Conviction Relief without a hearing.
>
> The Petitioner has the right to respond to this notice of intention to dismiss the Petition for Post Conviction Relief within twenty (20) days of the date of this Order. As counsel has been permitted to withdraw, this response must be filed by Petitioner or private counsel. If such a response is not filed within twenty (20) days, this Court will enter a final Order dismissing the PCRA Petition.

Order, 8/13/13, at 1. The PCRA court states that the above order provided Appellant with adequate notice of the reasons for the dismissal of his PCRA petition.

We disagree. We could countenance that the above order might provide adequate notice to a legal professional of the reasons for the

- 7 -

dismissal of Appellant's PCRA petition. We would reasonably expect that even a marginally competent attorney would be naturally inclined to locate and read the referenced no-merit letter. However, this notice was not directed to an attorney, but instead to an indigent, incarcerated, and potentially under- or uneducated individual who is subject to an extremely narrow window within which to respond to the court's notice.

Furthermore, the notice does not even contain language that would suggest to a layperson that the reasons for dismissal are contained within the no-merit letter, such as by stating that the reasons for dismissal are identical to the reasons asserted by counsel in the *Turner*/*Finley* letter. And even if the court did use such language, it is apparent from the record that the *Turner*/*Finley* letter in question was not attached to the notice provided to Appellant, a simple act that would have done much to direct attention to the rationale therein.

In *Commonwealth v. Feighery*, 661 A.2d 437, 439 (Pa. Super. 1995), we held that that PCRA counsel's filing of a *Turner*/*Finley* letter was not adequate to satisfy Rule 907's notice requirement.[3] We first recognized that the notice of the intention to dismiss requirement is mandatory, as is the Rule's directive that such notice provide the rationale for the dismissal.

_____

[3] *Feighery* specifically dealt with prior Rule of Criminal Procedure 1507, the previous version of Rule 907. The only notable difference between the two similarly worded provisions is that the current version of Rule 907 provides a 20-day response period, whereas prior Rule 1507 only allotted 10 days.

*Feighery*, 661 A.2d at 439. We rejected the Commonwealth's argument that "counsel's [no-merit] letter to [the] appellant is sufficient notice to meet the requirement" because we could "only engage in a presumption that [the] appellant has received a copy of this letter which is addressed to the court, and also the letter makes no mention of the potential for dismissal without hearing when there is no further action by appellant." *Id.*

Although the PCRA court did provide a bare-bones notice pursuant to Rule 907 in this case, whereas the PCRA court in *Feighery* relied exclusively on a *Turner*/*Finley* letter to satisfy the notice requirement, some of the same concerns we raised in *Feighery* remain present in this case. Indeed, in Attorney Coffey's no-merit letter to the PCRA court, he states only that he "intends to provide [Appellant] with a copy of this No-Merit Letter …." *Turner*/*Finley* Letter, 8/7/13, at 1. Thus, at the time the PCRA court issued notice of its intent to dismiss Appellant's PCRA petition, the court had to rely on counsel's assertion that Appellant would be provided with a copy of the letter. Clearly the Rule 907 notice is a requirement on the court, not on Appellant's counsel. The spirit of that rule also suggests that it is the court's responsibility to inform a PCRA petitioner of the reasons why their PCRA petition will be dismissed.

Despite the facial defects contained in the PCRA court's Rule 907 notice, however, we can ascertain from the record that Appellant was adequately informed of the reasons underlying the court's intent to dismiss. As will be discussed in greater detail below, Appellant did file a response to

the Rule 907 notice, inaptly titled a "Petition to Proceed *Pro Se*," within the 20-day window allotted by Rule 907. In that petition, Appellant responded to counsel's ***Turner***/***Finley*** letter by claiming that Attorney Coffey "confused" the issues Appellant wanted to raise, and that Attorney Coffey failed to raise potentially meritorious claims. Appellant's Petition to Proceed *Pro Se*, 8/26/13, at 1 ¶ 2. This demonstrates that Appellant was not prejudiced by the defects inherent in the PCRA court's Rule 907 notice, especially since Appellant's response to the Rule 907 notice will ultimately provide him with relief.

Next, Appellant claims that the PCRA court failed to comply with Pa.R.Crim.P. 121 when it declined to hold a hearing to determine if Appellant was competent to represent himself. Essentially, Appellant claims that the court should not have permitted Attorney Coffey to withdraw without first conducting a "colloquy to ensure that waiver of the right to counsel was knowingly, voluntarily, and intelligently [made] pursuant to [Rule] 121(a)(2)." Appellant's Brief at 11. Appellant also asserts that the PCRA court's failure in this regard violated his Sixth Amendment right to self-representation.

This claim is simply misplaced in the context of counsel's withdraw pursuant to ***Turner***/***Finley***. With respect to Appellant's allusion to the Sixth Amendment, we note that "a petitioner has no federal constitutional right to counsel in a state collateral proceeding." ***Commonwealth v. Priovolos***, 715 A.2d 420, 421 (Pa. 1998). Moreover, we see no evidence of a violation

- 10 -

of Appellant's Sixth Amendment right to self-representation. Appellant was permitted to represent himself *pro se*, and continues to do so without hindrance. Accordingly, we ascertain no Sixth Amendment violation in this regard.

Appellant's assertion that Rule 121 was violated in this case also lacks merit. Rule 121 provides that a "defendant may waive the right to be represented by counsel." Pa.R.Crim.P. 121(A)(1). Rule 121(A)(2) provides a colloquy for a trial court to use in order to ascertain whether the decision to proceed *pro se* is "knowing, voluntary, and intelligent." Pa.R.Crim.P. 121(A)(2). However, in this case, Appellant did not "waive" his right to counsel when the court permitted PCRA counsel to withdraw.

As noted above, there is no Sixth Amendment right to counsel in collateral proceedings. Instead, first-time PCRA petitioners are afforded a statutory right to counsel pursuant to Pa.R.Crim.P. 904. ***See*** Pa.R.Crim.P.904(C) ("Except as provided in paragraph (H), when an unrepresented defendant satisfies the judge that the defendant is unable to afford or otherwise procure counsel, the judge shall appoint counsel to represent the defendant on the defendant's first petition for post-conviction collateral relief."). Here, Appellant was afforded that statutory right with the appointment of Attorney Coffey. Attorney Coffey, ostensibly pursuant to the framework outlined by ***Turner*** and ***Finley***, was permitted to withdraw from representing Appellant. In these circumstances, Rule 121 is simply not implicated, because the withdrawal of counsel was precipitated by a

*Turner*/*Finley* letter, not by Appellant's desire to waive his right to counsel. When counsel withdraws pursuant to *Turner* and *Finley*, the affected petitioner "may proceed *pro se*, or by privately retained counsel, or not at all." *Finley*, 550 A.2d at 218. There is simply no purpose served by conducting a Rule 121 colloquy when the *Turner*/*Finley* framework permits Appellant to proceed *pro se* without any requirement that he affirmatively waive his right to counsel. Accordingly, we conclude that Appellant's second claim lacks merit.

We will address Appellant's remaining two claims together. In Appellant's third issue, he claims that trial counsel was ineffective for failing to seek suppression of a suggestive identification procedure, a show-up that occurred in the immediate aftermath of the crime for which Appellant was convicted.[4] In Appellant's fourth issue, he essentially asserts that the PCRA court erred when it accepted the *Turner*/*Finley* letter despite Attorney Coffey's failure to meet the requirements of *Turner*/*Finley*.

_____

[4] Appellant also asserts that appellate counsel was ineffective for not raising this matter on direct appeal. However, these are essentially mutually exclusive claims. With few exceptions, direct appellate counsel cannot raise a claim that was not adequately preserved in the trial court. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). A necessary corollary to this waiver rule is that appellate counsel cannot be found to be ineffective for his or her failure to raise a claim that trial counsel failed to adequately preserve for appellate review.

In *Turner*, our Supreme Court "set forth the appropriate procedures for the withdrawal of court-appointed counsel in collateral attacks on criminal convictions[.]" *Turner*, 544 A.2d at 927. The traditional requirements for proper withdrawal of PCRA counsel, originally elucidated in *Finley*, were updated by this Court in *Commonwealth v. Friend*, 896 A.2d 607 (Pa. Super. 2006), *abrogated by* *Commonwealth v. Pitts*, 981 A.2d 875 (Pa. 2009),[5] which provides:

> (1) As part of an application to withdraw as counsel, PCRA counsel must attach to the application a "no-merit" letter[;]
>
> 2) PCRA counsel must, in the "no-merit" letter, list each claim the petitioner wishes to have reviewed, and detail the nature and extent of counsel's review of the merits of each of those claims[;]
>
> 3) PCRA counsel must set forth in the "no-merit" letter an explanation of why the petitioner's issues are meritless[;]
>
> 4) PCRA counsel must contemporaneously forward to the petitioner a copy of the application to withdraw, which must include (i) a copy of both the "no-merit" letter, and (ii) a statement advising the PCRA petitioner that, in the event the

_____

[5] In **Pitts**, our Supreme Court abrogated *Friend* "[t]o the extent *Friend* stands for the proposition that an appellate court may *sua sponte* review the sufficiency of a no-merit letter when the defendant has not raised such issue." *Pitts*, 981 A.2d at 879. Here, we deem Appellant's assertions regarding the adequacy of Attorney Coffey's no-merit letter adequately preserved by his response to the PCRA court's Rule 907 notice on August 26, 2013. In Appellant's "Petition to Proceed *Pro Se*" filed on that date, Appellant indicated that Attorney Coffey had failed to raise or address a potentially meritorious claim of trial counsel's ineffectiveness. Furthermore, Appellant continues to assert this argument across issues III and IV of his appellate brief.

trial court grants the application of counsel to withdraw, the petitioner has the right to proceed *pro se*, or with the assistance of privately retained counsel;

5) the court must conduct its own independent review of the record in the light of the PCRA petition and the issues set forth therein, as well as of the contents of the petition of PCRA counsel to withdraw; and

6) the court must agree with counsel that the petition is meritless.

**Friend**, 896 A.2d at 615 (footnote omitted).

In Appellant's *pro se* PCRA petition, he clearly indicated that he wished to raise the claim that "counsel failed to [seek suppression of a] tainted out-of-court identification[.]" *Pro Se* PCRA Petition, 5/9/13, at 3. Attorney Coffey acknowledged that Appellant raised this claim in his **Turner**/**Finley** letter. **Turner**/**Finley** Letter, 8/7/13, at 7. In assessing the issue, however, Attorney Coffey characterized the claim merely as the predicate for assailing the victims' *in-court identification* of Appellant. **Id.** at 10. He also assessed whether the stop of Appellant was permissible under the Fourth Amendment. **Id**. at 10-11. Attorney Coffey never addressed whether evidence concerning the identification at the show-up was itself suppressible on the basis that it was unduly suggestive. He did, however, conclude that "the police had probable cause to detain [Appellant] and permit the victims to view him for identification purposes." **Id.** at 11.

This conclusion was legally erroneous. Whether the police had probable cause to detain Appellant is not the test applied to determine

whether a show-up of the sort that occurred in this case was suppressible.

The applicable test is as follows:

> Generally, "in reviewing the propriety of identification evidence, the central inquiry is whether, under the totality of the circumstances, the identification was reliable." ***Commonwealth v. Meachum***, 711 A.2d 1029 (Pa. Super. 1998). The question for the suppression court is whether the challenged identification has sufficient indicia of reliability to warrant admission, even though the confrontation procedure may have been suggestive. ***Commonwealth v. Thompkins***, 311 Pa.Super. 357, 363, 457 A.2d 925, 928 (1983) (citation and footnote omitted).
>
>> Suggestiveness in the identification process is a factor to be considered in determining the admissibility of such evidence, but "suggestiveness alone does not warrant exclusion." A pretrial identification will not be suppressed as violative of due process rights unless the facts demonstrate that the identification procedure was so infected by suggestiveness "as to give rise to a substantial likelihood of irreparable misidentification."
>
> ***Commonwealth v. Sample***, 321 Pa.Super. 457, 462, 468 A.2d 799, 801 (1983) (citations and quotations omitted). In determining whether a particular identification was reliable, the suppression court should consider "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of [her] prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation." ***Commonwealth v. Monroe***, 373 Pa.Super. 618, 622, 542 A.2d 113, 115 (1988), *appeal denied*, 522 Pa. 574, 559 A.2d 36 (1989) (citation omitted). The opportunity of the witness to view the actor at the time of the crime is the key factor in the totality of the circumstances analysis. ***Commonwealth v. Spiegel***, 311 Pa.Super. 135, 145, 457 A.2d 531, 536 (1983) (citation omitted).

***Commonwealth v. Bruce***, 717 A.2d 1033, 1036-37 (Pa. Super. 1998).

PCRA counsel did conclude that the trial court's credibility determinations regarding the certainty of the victim's *in-court* identifications

of Appellant precluded a meritorious claim that trial counsel was ineffective for failing to seek suppression of the in-court identification. However, that is a distinct issue from the suppressibility of the out-of-court identification (the show-up). Indeed, failing to make such a distinction ignores the possibility that an unduly suggestive show-up may have affected the witnesses' certainty level as to their in-court identifications. Moreover, certain factors present during the show-up suggest that there was at least some arguable merit to the forgone suppression claim. Appellant was handcuffed at the time of the show-up and the initial descriptions of the perpetrators were based primarily upon their clothing and race rather than any facial features or other intrinsic identifying characteristics. As such, we can certainly conclude that a suppression claim targeting the show-up identification evidence would not have been frivolous.[6]

The pertinent question before the PCRA court, therefore, was whether counsel listed and addressed this claim in his **Turner**/**Finley** letter. We conclude that Attorney Coffey did not address the claim, even though he acknowledged that Appellant has raised the claim in his *pro se* PCRA petition. As such, Attorney Coffey's **Turner**/**Finley** did not conform to the second and third **Friend** requirements. Consequently, the PCRA court's

_____

[6] We do not issue any conclusion regarding whether such a claim would have ultimately been deemed meritorious.

conclusion that "appointed counsel did specifically address the question" is not supported by the record. PCO, at 5. Furthermore, the PCRA court's agreement with the non-existent analysis simply cannot satisfy the fifth and sixth *Friend* requirements. The PCRA court stated:

> As noted by appointed counsel in his "No-Merit" letter and adopted by this Court, the Superior Court has previously described, albeit in the context of a challenge to the weight of the evidence, that one victim "steadfastly" identified Petitioner as the perpetrator at trial and both victims positively identified Petitioner at trial and at the scene of the crime. Any motion to suppress challenging the pretrial identification of Petitioner would have been denied and this claim is, therefore, baseless.

*Id.* at 5.

As noted above, counsel did not address the viability of a suppression motion targeting the show-up. However, the PCRA court appears to address the claim and suggests that our prior decision dismissing Appellant's weight of the evidence claim supports its determination that all challenges to the admissibility of identification evidence in this case would have been frivolous on that basis. However, as noted in *Bruce*, *supra*, the certainty displayed by witnesses is but one of many factors the court must consider in determining the admissibility of identification evidence. The court must also consider "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of [her] prior description of the criminal, … [and] the time between the crime and the confrontation." *Bruce*, 717 A.2d at 1037. Our prior decision dismissing Appellant's weight of the evidence claim necessarily presumed the

- 17 -

admissibility of the evidence presented at Appellant's trial. It appears, therefore, that the PCRA court conflates these two distinct issues. We disagree, therefore, that our prior decision renders Appellant's proposed ineffectiveness claim precluded or frivolous.

We conclude that both Attorney Coffey's *Turner*/*Finley* letter and the PCRA court's review thereof did not meet the requirements of *Friend*. Accordingly, the PCRA court's order dismissing Appellant's petition on the basis of the *Turner*/*Finley* letter was not supported by the record and constitutes legal error. However, because the PCRA court dismissed Appellant's petition without a hearing, there was no inquiry below into whether trial counsel had a reasonable basis for not filing a suppression motion targeting the 'show-up' evidence, nor was there any inquiry regarding whether Appellant was prejudiced by counsel's failure to pursue such relief. As such, we cannot reach the merit of Appellant's ineffectiveness claim at this time. Consequently, we reverse the order of the PCRA court denying Appellant's PCRA petition without a hearing and remand this matter to the trial court for further proceedings. We instruct the PCRA court to appoint new counsel for the filing of an amended petition in the event that Appellant does not wish to continue *pro se*.[7]

_____

[7] If Appellant wishes to continue representing himself *pro se*, the PCRA Court should conduct a colloquy to determine that the waiver of his statutory right to counsel on collateral review "is a knowing, intelligent, and voluntary one." *Commonwealth v. Grazier*, 713 A.2d 81, 82 (Pa. 1998).

Order **_vacated_**.  Jurisdiction **_relinquished_**.

Judge Lazarus joins the memorandum.

Judge Ott concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/11/2014