**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DONALD MILLER | : | |
| | : | |
| Appellant | : | No. 2087 EDA 2020 |

Appeal from the PCRA Order Entered October 1, 2020
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0005060-2014

BEFORE: LAZARUS, J., DUBOW, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.: **FILED NOVEMBER 01, 2021**

Donald Miller (Miller) appeals the order of the Court of Common Pleas of Philadelphia County (PCRA court) denying his petition for post-conviction relief.[1] He argues that the PCRA court abused its discretion by summarily denying his claim of ineffective assistance of counsel. For the reasons outlined below, we affirm.

**I.**

The following facts are taken from the certified record. In 2013, Abdallah Dancy was murdered in a drive-by shooting. One of Dancy's friends

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] Miller's petition was filed pursuant to the Post-Conviction Relief Act, 42 Pa.C.S. §§ 9541-9546 (PCRA).

reported that while on his deathbed, Dancy said he saw Miller's vehicle at the time he was shot.[2] Further, the shooting was captured by multiple surveillance videos, confirming that the perpetrator was riding in Miller's vehicle at the time. That vehicle, a gold Chevy Impala, was soon located by police and numerous personal items found inside of it belonged to Miller.

Two eyewitnesses (Linda Hawthorne Flamer and Beverly Downs) initially identified Miller as the person who shot Dancy. When questioned by police shortly after the shooting, Flamer described the shooter as a clean-shaven man in his mid-20s with a medium brown complexion. Both witnesses selected Miller's picture from an array of eight photos.

About nine months after the shooting occurred, Miller was arrested and charged with murder and related firearm offenses. Miller's trial counsel filed a motion to suppress the identifications of the two witnesses, but apparently the motion was never litigated. Instead, defense counsel opted to cross-examine the witnesses at trial. Counsel elicited the fact that both eyewitnesses had stated at the preliminary hearing that Miller's photo was singled out when the photo arrays had been presented to them. **See** Preliminary Hearing Transcript, 4/29/2014, at pp. 15, 21, 37, 71.

---

[2] Dancy's friend who initially relayed the identification of Miller's vehicle later recanted that statement at trial.

Additionally, Flamer had stated at the preliminary hearing that Miller looked different from the day of the shooting because Miller had facial hair and his lips looked bigger than she remembered. *See id*. at p. 43. Yet, Flamer identified Miller as the shooter at the preliminary hearing. *See* Trial Transcript, 3/3/2015, at pp. 178-79. Flamer also candidly admitted that she occasionally suffered from memory lapses, which she treated with medication. *See id*. at p. 198.[3]

The detective who administered the photo array to Flamer (Edward Tolliver) denied that any emphasis had been put on Miller's photo. He explained that although the shooter was described as having no facial hair, eight photos of men with facial hair were put into the array viewed by the witnesses. Since Miller was apprehended about nine months after the shooting occurred and he had facial hair at that point, the other seven photos in the array depicted men with that same feature.

The second eyewitness, Downs, appeared at trial only after being compelled to do so by a court order. She recanted her prior identification and denied ever seeing the shooting. Downs claimed, as Flamer did, that she only selected Miller's photo out of an array because the police had repeatedly

_____

[3] Flamer stated at the preliminary hearing that a year after the shooting, she had been diagnosed with early onset dementia, but she clarified at trial that she did not actually receive such a diagnosis, and that she only suffered from occasional memory loss. *See* Trial Transcript, 3/4/2015, at pp. 17-19.

pointed to it as the face of the shooter. Detective Joseph Centeno, who administered the photo array to Downs, testified at trial and denied that the array had been suggestive. He testified further that Downs had been confident in selecting Miller's photo from that array.

The jury ultimately found Miller guilty of first-degree murder, carrying a firearm without a license, carrying a firearm in a public place, and possessing the instrument of a crime. He was sentenced to a term of life as to the murder count, and as to each of the three remaining counts, he received concurrent terms of two-and-one-half to five years.

Miller timely appealed and his judgment of sentenced was affirmed in **Commonwealth v. Miller**, 2448 EDA 2015 (Pa. Super. September 14, 2016) (unpublished memorandum). While the appeal had been pending, Miller prematurely filed a PCRA petition in which he claimed that his trial counsel had been ineffective for failing to litigate the motion to suppress the in-court and out-of-court identifications of the prosecution's eyewitnesses. An amended petition was filed on his behalf after the appeal concluded and the PCRA court ruled that it could be decided on the merits.

The PCRA court summarily dismissed the amended petition pursuant to Pa.R.Crim.P. 907. Miller timely appealed that ruling and the PCRA court discussed its reasons in a written opinion. **See** PCRA Court Opinion, 1/19/2021, at 10-15. Primarily, the PCRA court reasoned that Miller's ineffectiveness claim raised no material issues of fact that would require an

- 4 -

evidentiary hearing.  Miller raises a single issue in his appellate brief – whether the PCRA court abused its discretion in summarily denying his claim.

## II.

The sole issue here is whether the PCRA court abused its discretion in summarily dismissing Miller's claim that his trial counsel was ineffective by failing to challenge the admissibility of incriminating eyewitness identifications.[4]

When assessing such claims, we presume that counsel was effective. *See Commonwealth v. Bomar*, 104 A.3d 1179, 1188 (Pa. 2014).  A PCRA petitioner may overcome that presumption by establishing that:  "(1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's action or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's error, with prejudice measured by whether there is a reasonable probability that the result of the proceeding would have been different." *Id*.

To establish the prejudice prong of an ineffective assistance of counsel claim, "the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Commonwealth v. King*, 57 A.3d 607, 613 (Pa. 2012).

---

[4] The PCRA court's order must be affirmed if it is supported by evidence in the record and free of legal error.  *See Commonwealth v. Pitts*, 981 A.2d 875 (Pa. 2009).

If the petitioner fails to prove any of these prongs, the claim must be dismissed. *See Bomar*, 104 A.3d at 1188. Moreover, "[c]ounsel will not be deemed ineffective for failing to raise a meritless claim." *Commonwealth v. Washington*, 927 A.2d 586, 608 (Pa. 2007).

Miller contends in this appeal that his trial counsel was ineffective because the suppression issue he raises has arguable merit, there was no reasonable basis for trial counsel not to seek the suppression of the identifications, and there was a reasonable probability that he would have had a better outcome at his trial if that evidence had been suppressed. According to Miller, he was entitled to an evidentiary hearing to resolve conflicting evidence as to whether the eyewitness identifications were unduly suggestive and unreliable.

The parties' respective briefs chiefly concern the first element of the ineffectiveness claim – whether there was arguable merit to the suppression motion that Miller's trial counsel declined to litigate. The admissibility of a pretrial identification is determined from the totality of the circumstances. *See Commonwealth v. Cousar*, 154 A.3d 287, 306 (Pa. 2017) (citing *Commonwealth v. Pierce*, 786 A.2d 203, 209 (Pa. 2001)). "A pretrial identification will only be suppressed unless the facts demonstrate that the identification procedure was so infected by suggestiveness as to give rise to a substantial likelihood of irreparable misidentification." *Cousar*, 154 A.3d at 306 (citing *Pierce*, 786 A.2d at 209).

The suggestiveness of an identification is gauged by several factors, including "[1] the opportunity of the witness to view the perpetrator at the time of the crime; [2] the witness' degree of attention; [3] the accuracy of her prior description of the perpetrator; [4] the level of certainty; and [5] the time between the crime and identification." *Commonwealth v. Bruce*, 717 A.2d 1033, 1037 (Pa. Super. 1998) (quoting *Commonwealth v. Monroe*, 542 A.2d 113, 115 (Pa. Super. 1988)). "The opportunity of the witness to view the actor at the time of the crime is the key factor in this analysis." *Commonwealth v. Spiegel*, 457 A.2d 531, 536 (Pa. Super. 1983).

In the present case, the two eyewitnesses who testified at Miller's trial both had an opportunity to view the perpetrator at the time of the crime. Both witnesses were focused on the shooting at the time it occurred, and their descriptions of the shooter's vehicle and physical description were consistent with what surveillance video recorded of the incident.

However, both witnesses stated that the police had suggested which photo to choose out of an array. If found credible, this would arguably be grounds to exclude the identifications from trial. Further, one of the witnesses (Downs) never gave the police a description of the shooter and she has since recanted her pretrial identification. Although the second witness (Flamer) identified Miller as the shooter at trial, she also admitted to having memory lapses.

The suppression issue at hand presents a mixed question of law and fact. A reviewing court is not bound by a trial court's legal conclusions, but "the trial court's factual findings are [binding if] supported by the record." **Commonwealth v. Jacoby**, 170 A.3d 1065, 1081 (Pa. 2017). "[I]n cases where the PCRA court declined to hold a hearing, and where an assessment of witness testimony was essential to a petitioner's ineffectiveness claims, the PCRA court must make specific credibility determinations." **Commonwealth v. Johnson**, 966 A.2d 523, 540 (Pa. 2009).

Moreover, Pennsylvania Rule of Criminal Procedure 907 provides that when a claim is raised in a PCRA petition, it may be summarily denied if:

> the judge is satisfied from this review that there are no genuine issues concerning any material fact and that the defendant is not entitled to post-conviction collateral relief, and no purpose would be served by any further proceedings, the judge shall give notice to the parties of the intention to dismiss the petition and shall state in the notice the reasons for the dismissal.

Pa.R.Crim.P. 907.[5]

The PCRA court concluded here that an evidentiary hearing was unnecessary because there was no genuine question of fact as to the credibility of the testifying officers and the two eyewitnesses. That is, the

---

[5] "To obtain reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing." **Commonwealth v. Paddy**, 15 A.3d 431, 442 (Pa. 2011) (quoting **Commonwealth v. D'Amato**, 856 A.2d 806, 820 (Pa. 2004)).

PCRA court ruled that the suppression issue, which was the underlying basis for Miller's claim of the ineffectiveness, had no arguable merit because the identifications would have been admitted at trial regardless of whether his counsel pursued the motion to suppress.

Significantly, the judge who presided at the PCRA proceedings was the same judge who presided at the trial at which all of the pertinent witnesses testified. While Miller did present conflicting evidence as to the reliability of the eyewitnesses' identifications, the PCRA court was able to resolve that conflict without a hearing because it had already observed the relevant witnesses give their accounts of how the identifications were produced. *See Commonwealth v. Williams*, 732 A.2d 1167, 1180 (Pa. 1999) (recognizing that it may be unnecessary for a PCRA court to hold a hearing to resolve questions of credibility "when he or she was the judge who presided over the defendant's trial.").

Since the PCRA court had the chance at trial and the preliminary hearing to assess the witnesses in person, and the PCRA court made particularized credibility determinations when ruling on the PCRA petition, the testimony of the witnesses did not need to be rehashed. *See* PCRA Court Opinion, 1/19/2021, at 10-15; *see also Commonwealth v. Johnson*, 139 A.3d 1257, 1276-79 (Pa. 2016) (affirming summary dismissal of PCRA claim that counsel failed to seek suppression of suggestive identifications because the PCRA court

relied on adequate facts in the record to conclude that the identifications were admissible and not unduly suggestive).[6]

It was, therefore, within the PCRA court's discretion to weigh the conflicting evidence in the record and summarily rule that the photo arrays would have been found admissible and not unduly suggestive had trial counsel pursued the suppression motion. **See** Pa.R.Crim.P. 907; **see also Commonwealth v. Jones**, 942 A.2d 903, 906 (Pa. Super. 2008) ("[I]f the PCRA court can determine from the record that no genuine issues of material fact exist, then a hearing is not necessary.") (citing **Commonwealth v. Barbosa**, 819 A.2d 81 (Pa. Super. 2003)). Thus, the order dismissing Miller's PCRA petition must stand.

Order affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 11/1/2021*

---

[6] We note further that the jury almost certainly found the eyewitness identifications to be credible by virtue of the guilty verdict entered against Miller.

- 10 -