512 A.2d 667

**COMMONWEALTH of Pennsylvania,**

**v.**

**Joel BUTLER, Appellant.**

Superior Court of Pennsylvania.

Argued May 6, 1986.

Filed July 3, 1986.

534

Sharon L. Steingard, Philadelphia, for appellant.

Kathleen A. McDonnell, Assistant District Attorney, Philadelphia, for Com., appellee.

Before CIRILLO, President Judge, and WIEAND and OLSZEWSKI, JJ.

CIRILLO, President Judge:

This is an appeal from a judgment of sentence entered by the Court of Common Pleas of Philadelphia County. Following a bench trial, appellant Joel Butler was convicted of robbery, aggravated assault, resisting arrest and theft. He was sentenced to three to seven years imprisonment for the robbery conviction, and to a concurrent term of imprison-

ment of two and one-half to five years for the aggravated assault conviction. We affirm.

At approximately 7:35 p.m., Leonora Colon and Luisa Rivera were standing outside the Colons' residence. Appellant appeared in front of them, looked at Ms. Rivera and then grabbed four gold chains from Ms. Colon's neck. In the course of the chain snatch, appellant grabbed Ms. Colon by the dress and knocked her to the ground. The incident occurred in daylight and both women were within arms length of the appellant the entire time, which was approximately five seconds.

Ms. Rivera's screams for help summoned an unidentified young Hispanic male, who chased after appellant. Moments later, the women saw a police vehicle and waived for it to stop. The vehicle was operated by Sergeant Rudloff. The women did not speak English and Sergeant Rudloff spoke no Spanish; however, he did notice their hysterical state and Ms. Colon's tattered appearance. An English speaking Hispanic youth appeared on the scene and translated the women's account of what had happened for Sergeant Rudloff. Approximately 15 to 20 seconds later, the first youth, who had pursued appellant, appeared and told Sergeant Rudloff that the perpetrator was hiding behind a wall about a block away.

The officer went to the described location and found appellant behind a wall and looking at the gold chain. Sergeant Rudloff cornered the suspect and instructed him not to move. Instead, the suspect punched the officer in the shoulder and attempted to flee. He was apprehended by additional officers who seized the gold chains from the suspect after subduing him.

Appellant was taken directly to a nearby police station. Meanwhile, additional officers were dispatched to pick up the victim and Ms. Rivera. Although the Commonwealth did not explain the reasoning for transporting both the suspect and the witness four city blocks to the station house in separate vehicles, as opposed to simply bringing the suspect one block to the scene of the crime, the trial court

inferred that this was done because a Spanish speaking officer was present at the police station.

Appellant arrived at the police station before the victim and Ms. Rivera. Moments after appellant arrived at the police station, Ms. Rivera entered the station, noticed appellant and spontaneously identified him. Ms. Colon was then asked in Spanish if that was the man who robbed her. She replied "yes". The total amount of time which elapsed between appellant's arrest and identification was between ten and fifteen minutes.

Appellant raises six issues on appeal, claiming that 1) the warrantless arrest was not supported by probable cause and therefore the physical evidence should be suppressed; 2) his motion for suppression of identification evidence should have been granted because the arrest was not supported by probable cause; he was denied his right to counsel during identification; the identification procedure was unnecessarily suggestive, and the incourt identification of appellant was not based on an independent source and was tainted by the out-of-court identification procedure; 3) the denial of his request for a line-up was an abuse of discretion; 4) the evidence in support of the guilty verdict on the charges of aggravated assault and resisting arrest was insufficient; 5) the trial court erred in sentencing appellant in the aggravated range of the sentencing guidelines; and 6) he was denied his right to due process of law in the sentencing procedure.

■ We first consider the issue of probable cause. At the outset, it should be noted that the "totality of the circumstances" analysis of *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) has been adopted in the Commonwealth of Pennsylvania. *See Commonwealth v. Gray*, 509 Pa. 476, 503 A.2d 921 (1985).

In utilizing the *Gates* approach as it applies to a warrantless arrest, a police officer must make a practical common sense decision whether, given all of the circumstances known to him at that time, including hearsay information,

there is a fair probability that a crime was committed and that the suspect committed the crime. The duty of this Court is to insure that the police officer had a "substantial basis for concluding that probable cause existed." *See Commonwealth v. Sorrell*, 319 Pa.Super. 103, 465 A.2d 1250 (1983). We find that the arresting officer had a substantial basis for concluding that probable cause existed at the time he made his warrantless arrest of appellant.

The veracity of the youth who described appellant's location has never been questioned; he was only a conscientious bystander trying to help persons in distress. Whether the youth knew that the person he was chasing was in fact appellant, however, is not as clear. Yet, given that the youth appeared on the scene of the crime seconds after the crime had occurred and had given instant chase, it is reasonable to infer that the youth saw the person fleeing from the scene and assumed that individual was the perpetrator. Moreover, the sequence of events which transpired after the youth brought Sergeant Rudloff to appellant gave Sergeant Rudloff sufficient probable cause to arrest. The officer saw a man kneeling and looking at a gold chain such as had been stolen just minutes before and only one block away. When Sergeant Rudloff, an officer in uniform, instructed appellant not to move, appellant struck him and attempted to flee the scene and then physically resisted arrest. It is reasonable to assume from these facts, independent of the first youth's knowledge, that there was a substantial basis for concluding that appellant was the perpetrator. As such, we find there was sufficient probable cause for the officer to believe that a crime had been committed and that appellant was indeed the perpetrator of that crime. Therefore, appellant's motion to suppress the physical evidence was properly denied.

Appellant next takes issue with the trial court's decision to admit the post-arrest identifications. Appellant first argues that since there was no probable cause for the arrest in the first instance, the post-arrest identifications should be suppressed as the "fruits" of the illegal arrest.

Since we have found that there was sufficient probable cause for appellant's arrest, we need not address this contention.

■ Appellant then argues that the out-of-court identification should be suppressed on the ground that he was denied his right to counsel at the identification procedure. In support of his position, appellant relies on *Commonwealth v. Minnis*, 312 Pa.Super. 53, 458 A.2d 231 (1983). In *Minnis*, this Court followed *Commonwealth v. Richman*, 458 Pa. 167, 320 A.2d 351 (1974), which states that the right to counsel attaches at the time of an individual's arrest and as such, an individual's right to counsel exists for identification confrontations.

In *Minnis* we noted that "on-the-scene" identifications has been extended to identifications in hospitals, *see Commonwealth v. Aaron*, 255 Pa.Super. 289, 386 A.2d 1006 (1979), and to "on-the-scene" identifications a few blocks away from the scene of the crime with the suspect handcuffed in a police van. *See Commonwealth v. Allen*, 287 Pa.Super. 88, 429 A.2d 1113 (1981). *See also Commonwealth v. Dickerson*, 226 Pa.Super. 425, 313 A.2d 337 (1973).

The reasoning for broadening the "on-the-scene" requirement was based on dual considerations, namely, the exigent circumstances existing at the time and the minimal amount of suggestiveness surrounding the identification itself, which reduces the likelihood of misidentification. In *Minnis*, we refused to extend the "on-the-scene" identification to police station identifications where the victim and the witness were called down to the police station one-half hour after the incident to identify the alleged assailant. It is clear that in *Minnis* there were no exigent circumstances present. Moreover, the rational underlying *Minnis* was the concern of possible suggestive behavior and conduct attendant to the identification procedure. As the *Minnis* Court indicated, where a suspect is being held at a police station awaiting the victim's arrival for an identification, there are suggestive influences in that police controlled setting which

may not be as prevalent in other situations. We must view the facts of the instant case in light of the underlying rational of *Minnis*, that is, the exigent circumstances existing at the time of the identification and the amount of suggestiveness existing at the time of identification and its effect upon the likelihood of misidentification.

Our Supreme Court has stated in *Commonwealth v. Sexton*, 485 Pa. 17, 400 A.2d 1289 (1979), that the key in determining the admissability of an out-of-court identification is not simply the suggestiveness of the circumstances surrounding it but rather the likelihood of misidentification.

It is the likelihood of misidentification which violates a defendant's right to due process and it is this which [is] the basis of the exclusion of the evidence ... Suggestive confrontations are disapproved because they increase the likelihood of misidentification, and unnecessarily suggestive ones are condemned for the further reason that the increase chance of misidentification is gratuitous.

*Commonwealth v. Sexton*, 485 Pa. at 22, 400 A.2d at 1291, citing *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).

In *Commonwealth v. Minnis, supra*, this Court declined to extend the "on-the-scene" requirement to police stations as the facts in that case did not so warrant. However, the facts of this case clearly warrant the admissibility of the out-of-court identification given the attendant exigent circumstances. Additionally, the likelihood of suggestiveness was minimal as was the likelihood of a misidentification. Upon apprehending appellant, the police took him directly to a nearby police station which was located only four city blocks from the scene. Meanwhile, additional officers were dispatched to pick up the victim and the eye witness to transport them to the station house. Such a procedure was necessary, as the trial court inferred, since a Spanish speaking officer was present at the police station to interpret for the victim and the eye witness who did not speak any English.

Appellant arrived at the police station moments before the victim and the eyewitness. As the eyewitness entered the police station, she immediately noticed appellant and spontaneously identified him as the individual who robbed the victim. The total elapsed time between the arrest outdoors and his identification indoors were a mere 10 to 15 minutes. Here, the exigent circumstance which required the police to bring appellant and the witnesses to the station house was the fact that the witness and victim spoke only Spanish and the arresting officer spoke only English. The location nearest to the scene of the crime where a Spanish speaking officer was present was the station house, a mere four blocks from the scene. The usual suggestive atmosphere of a police station was not present in the instant case, due to the spontaneous identification. This differs considerably from the normal identification procedures in police headquarters where a witness views the suspect in a line-up. In that instance, the concerns of this Court as indicated in *Commonwealth v. Minnis, supra,* are in play. Therefore, the uncontrived meeting between appellant and the witness and the spontaneous identification of appellant by that witness without prompting from a police officer substantially reduced the likelihood of misidentification which is the cornerstone for determining whether an identification should be admissible.

This case is analagous to *Commonwealth v. Wilcox,* 481 Pa. 284, 290, 392 A.2d 1294 (1978), wherein it was also argued that a spontaneous identification made by a witness was improper. The facts in *Wilcox* reveal that the witness was in the police station when the defendant walked by him in the custody of police. The witness told police that defendant was the killer. The evidence in *Wilcox,* as does the evidence in the case at bar, shows that the incident was accidental and not contrived. Under the circumstances, the Pennsylvania Supreme Court found the spontaneous identification to be proper.

Similarly, in *Commonwealth v. White,* 447 Pa. 331, 290 A.2d 246 (1972), the defendant argued that the police station

identification should be suppressed because it was unnecessarily suggestive. In *White*, after the defendant's arrest, he and the other suspects were taken to the station house where they were handcuffed and seated on a bench in the waiting room. The victim was telephoned by the police and told that several suspects had been taken into custody and were available for viewing. The victim arrived at the station and upon entering the room where the suspects were seated, spontaneously and without any questioning by the police, identified the defendant as one of the assailants. The Supreme Court found that the identification was not so unnecessarily suggestive and susceptible to irreparable mistaken identification that the defendant was denied due process of law. The Court stated that when the confrontation of an accused and accuser is uncontrived and the ensuing identification does not result from any undue suggestion or other proscribed police practice, there is no due process violation. As in the case at hand, the confrontation between the witness and the suspect in White was not contrived and the spontaneous identification did not result from any undue suggestion or other proscribed police practice. We find that the out-of-court identification of the appellant in the instant matter is admissible.

■ However, assuming *arguendo* that the out-of-court identification was improper and thus inadmissible, we find that there was a sufficient, independent basis for the in-court identification of the appellant. Both witnesses had the opportunity to view appellant at arms length in daylight for approximately five seconds. Ms. Rivera, who was not attacked, watched the robbery undisturbed a few feet away. Ms. Colon not only had the same opportunity to view appellant, but, as a victim of the robbery, also had the impression of his face clearly etched in her mind. In *Commonwealth v. Bradford*, 305 Pa.Super. 593, 598, 451 A.2d 1035, 1037 (1982), this Court held the victim's in-court identification admissible when the victim saw the defendant's facial features at close range for 3 to 4 seconds while chasing him immediately after the robbery. This Court

stated that "[w]henever the victim of the crime has an opportunity to observe the criminal, the impression of the face of an assailant is etched upon the prey by the terror of the occasion." *Id. See also Commonwealth v. Woods*, 275 Pa.Super. 392, 399, 418 A.2d 1346, 1350 (1980) (en banc), *appeal dismissed*, 498 Pa. 140, 445 A.2d 106 (1982) (victim's identification of her assailant found reliable because brief view of the attacker under adequate lighting would have seemed like an eternity). Likewise, in the case before us, both the victim and the witness had 5 seconds to observe the defendant's face at close range and in the daylight. Therefore, we find that the in-court identification of the appellant was sufficient and had an independent basis.

■ Appellant next contends that the denial of a lineup constituted an abuse of discretion by the trial court. Appellant argues that this denial constituted an abuse of discretion thus entitling the appellant to a new trial. While he recognizes that there is no constitutional right to a pre-trial lineup, appellant contends that when the issue of identification is legitimately in question, a timely request for a pre-trial lineup should be granted. *Commonwealth v. Sexton*, 485 Pa. 17, 400 A.2d 1289 (1979). Assuming *arguendo* that the identification of appellant is a legitimate issue, we find that the denial of the requested lineup was not an abuse of discretion. In *Sexton*, the only evidence linking the defendant to the crime was his identification by the witness.

In *Commonwealth v. Brown*, 302 Pa.Super. 391, 448 A.2d 1097 (1982), a case similar to *Sexton*, the sole evidence linking the appellant to the robbery was the identification and testimony of two witnesses, both of whom had no knowledge of the appellant prior to the crime. In this case, however, there is more evidence than the in-court identification of appellant which links him to the crime: there was an out-of-court identification made by both the victim and the witness; and when appellant was apprehended by the police, the property which was stolen from the victim was found on his person. While it may be preferable to conduct

a lineup in order to ameliorate any suggestiveness necessarily inherent in a court room identification, we do not find the trial court abused its discretion in not allowing the requested lineup in light of the other evidence linking appellant to the crime. Additionally, the factual circumstances reveal that the identification testimony was reliable and that the in-court identification had an independent basis. Therefore, a lineup would have been fruitless. *See Commonwealth v. Davis,* 293 Pa.Super. 447, 439 A.2d 195 (1981); *see also Commonwealth v. Williams,* 274 Pa.Super. 464, 418 A.2d 499 (1980).

Appellant next contends that the evidence was insufficient to sustain his convictions for aggravated assault under 18 Pa.C.S.A. § 2702(a)(3) and resisting arrest under 18 Pa.C.S.A. § 5104. His contention is based primarily upon two grounds. First, appellant contends that his arrest which gave rise to the above charges was unlawful as it was executed without probable cause. This argument has been discussed and found to have no merit. Second, appellant contends that the Commonwealth did not prove all elements under the statutes, as his intent was to flee and not to injure the officer. Appellant argues that the arresting officer never explicitly informed him that he was under arrest. In addition, appellant points out that the officer was not injured, which indicates that his intent was not to injure the officer but to flee the scene.

The fact that the arresting officer did not explicitly inform appellant that he was under arrest is of no consequence. An arrest may be effectuated without a formal statement of arrest. *Commonwealth v. Benson,* 280 Pa. Super. 20, 421 A.2d 383 (1980). It is axiomatic that when a suspect is deprived of his freedom to leave, he is considered under arrest. *See, e.g., Commonwealth v. Swanger,* 453 Pa. 107, 307 A.2d 875 (1973). Here, the uniformed officer after observing appellant behind a wall looking at a gold chain, cornered him and explicitly instructed him not to move. Under these circumstances, it is reasonable to infer that appellant was under arrest.

■ The fact that the officer was not injured is of no consequence as neither statute requires that the officer be injured; all that is necessary is proof that the suspect attempted to cause injury, 18 Pa.C.S.A. § 2702(a)(3), or that he created a substantial risk of bodily injury, 18 Pa.C.S.A. § 5104. The testimony of the officer indicates that he was struck by appellant after appellant was cornered and instructed not to move. Furthermore, it took the assistance of other officers to subdue appellant. The trial court had sufficient evidence before it to conclude that the Commonwealth proved appellant's guilt as to each crime beyond a reasonable doubt.

■ Appellant's fifth claim is that the trial court abused its discretion in sentencing appellant in the aggravated range of the Sentencing Guidelines. He argues that the sole reason for sentencing in the aggravated range was the court's misplaced reliance on his prior record.

We shall affirm a trial court's sentence within the guidelines unless we determine that the sentence is "clearly unreasonable." *Commonwealth v. Drumgoole,* 341 Pa.Super. 468, 491 A.2d 1352 (1985). In making such a determination, 42 Pa.C.S.A. § 9781(d) directs us to examine the record in light of the following:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant.

(2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.

(3) The findings upon which the sentence was based.

(4) The guidelines promulgated by the Commission.

Our review of the record reveals the following: the court not only considered the appellant's prior record, but considered other pertinent factors as well; the trial court noted the "brash" nature of the offense; and, the court observed that appellant showed no remorse over the crime and failed to respond to rehabilitative services provided as a result of his prior conviction. This leads to the inescapable conclu-

sion that appellant posed a threat to the safety of the community. *See, e.g., Commonwealth v. Duffy*, 341 Pa.Super. 217, 491 A.2d 230 (1985).

■ Lastly, appellant makes the bare assertion that he was denied due process of law because the Sentencing Guidelines do not "clearly" specify factors the court is to consider in imposing a sentence. We find this claim to be without merit. In *Duffy*, we noted that the Pennsylvania Legislature rejected the first draft of the Sentencing Guidelines which included a list of aggravating circumstances. The Court reasoned that:

> the legislature ... feared that adherence to an exclusive list of factors would unduly fetter the sentencing judge's traditional discretion [in sentencing]. The legislature realized that no commission, no matter how competent, could ever anticipate the myriad of sentencing situations that judges face and that, therefore, flexibility must be maintained in any sentencing scheme.

*Commonwealth v. Duffy*, 341 Pa.Super. 217, 223, 491 A.2d 230, 232 (1985). Clearly, discretion in sentencing must be afforded the trial court. We find no abuse of discretion, and accordingly affirm.

Judgment of sentence affirmed.