J-S13019-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JOSEPH WAYNE WILSON | |
| Appellant | No. 882 WDA 2014 |

Appeal from the Judgment of Sentence May 2, 2014
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0011979-2013

BEFORE:  BENDER, P.J.E., MUNDY, J., and STABILE, J.

MEMORANDUM BY **MUNDY, J.:**                    **FILED MARCH 04, 2015**

Appellant, Joseph Wayne Wilson, appeals from the May 2, 2014 aggregate judgment of sentence of one year's probation, imposed after he was found guilty of one count each of obstructing the administration of law and resisting arrest.[1]  After careful review, we affirm.

The trial court summarized the relevant factual history of this case as follows.

> On August 14, 2013, at approximately 10:00 p.m., Sergeant Matt Lucas was patrolling the area of Lincoln and North Jackson Avenues in Bellevue Borough when he heard what sounded to him like angry screaming.  He parked and exited his vehicle to investigate the scream.  As soon as he exited his vehicle, he was able to identify the source of the sound as a female juvenile, who was screaming

_____

[1] 18 Pa.C.S.A. §§ 5101 and 5104, respectively.

profanities. The juvenile was known to the sergeant, and she was walking towards his location with [Appellant]. Sergeant Lucas was concerned about the juvenile's behavior because of the presence of many young children, who were leaving a church festival in the area.

[Appellant] and the juvenile continued walking in the direction of Sergeant Lucas and his vehicle, and Sergeant Lucas intercepted them as they passed. The officer informed the juvenile, whom he knew from being a resource officer at the local high school, that she could not scream profanities as she was doing and that she should stop her behavior and go home. The sergeant believed that she had heard and understood him, and the juvenile began walking away. When the juvenile was approximately five (5) feet away from the officer, she turned and screamed "f[**]k you" toward the officer, drawing everyone's attention. At that point, Sergeant Lucas took the juvenile by the arm, informed her that she was under arrest, and began walking her to his patrol car. The juvenile was being arrested for disorderly conduct.

As Sergeant Lucas was escorting the juvenile to his vehicle, [Appellant], who placed himself at the sergeant's shoulder within the sergeant's personal space, began repeatedly trying to talk Sergeant Lucas out of arresting the juvenile. Sergeant Lucas described that [Appellant] was "very, very close" to him. As [Appellant] continued to tell the sergeant to let the juvenile go, even after the officer told [Appellant] to leave at least four (4) times, the juvenile began resisting by pulling away from the sergeant, screaming and kicking. Sergeant Lucas, who was by himself throughout this incident, was finally able to get the juvenile into handcuffs and partially into his police cruiser. Throughout this struggle with the juvenile, [Appellant] was in close proximity to the officer, so close that the officer could push him away at times and so close that [Appellant] trapped the officer between himself and the police vehicle.

[Appellant]'s actions took the sergeant's attention away from the juvenile with whom he was struggling and caused the sergeant to place his attention on [Appellant], whose intentions were unclear. In fact, the sergeant testified that he was worried that the [Appellant] was going to jump on top of him, get aggressive, incite others to aggressive acts, act on ill intentions, or put his hands on the officer to take something from his belt or hurt the officer.

At this point, because he was still by himself and he was unsure what [Appellant] was going to do to further interfere with the juvenile's arrest, Sergeant Lucas advised [Appellant] that he was under arrest and grabbed his wrist, which was right in the officer's face. Upon grabbing [Appellant]'s arm, [Appellant] began to resist, pulling away from the officer and, in fact, getting his hand free of the officer's grip. Sergeant Lucas grabbed [Appellant]'s wrist again and was forced to try to take him to the ground. Back-up support then arrived, and it took two (2) officers to take [Appellant] to the ground and three (3) officers to get [Appellant] into custody.

[Appellant] also testified in his own defense during the trial. During his testimony, he acknowledged that he did not listen to the officer's instructions and that he advanced on the officer during the arrest of the juvenile. He also testified that he "blacked out" at some point during the incident and that there were several points that he could not remember. Importantly, [Appellant] could not remember how close he was to the officer during the incident.

Trial Court Opinion, 10/24/14, at 2-4 (internal citations omitted).

On December 5, 2013, the Commonwealth filed an information charging Appellant with the above-mentioned offenses, as well as one count of selling or furnishing alcohol to a minor.[2] On May 2, 2014, Appellant proceeded to a one-day bench trial, at the conclusion of which, the trial court found Appellant guilty of obstructing the administration of law and resisting arrest. The furnishing alcohol to a minor charge was withdrawn. That same day, the trial court imposed a sentence of six months' probation on each count, to run consecutively. On May 30, 2014, Appellant filed a timely notice of appeal.[3]

On appeal, Appellant raises the following two issues.

> I. Did the trial court err when it found [Appellant] guilty of obstruction of administration of law where the evidence was insufficient to prove, beyond a reasonable doubt, that [Appellant] intentionally obstructed, impaired, or perverted the administration of law, by way of force, violence, physical interference or obstacle, but his actions merely avoided compliance with law without affirmative interference with governmental functions?
>
> II. Did the trial court err when it found [Appellant] guilty of resisting arrest where the evidence was legally insufficient to prove, beyond a reasonable doubt, that [Appellant] created a substantial risk of bodily injury or employed

_____

[2] 18 Pa.C.S.A. § 6310.1(a).

[3] Appellant and the trial court have complied with Pennsylvania Rule of Appellate Procedure 1925.

> means justifying or requiring substantial force to overcome the resistance?

Appellant's Brief at 4.

Both of Appellant's issues on appeal challenge the sufficiency of the Commonwealth's evidence. We begin by noting our well-settled standard of review. "In reviewing the sufficiency of the evidence, we consider whether the evidence presented at trial, and all reasonable inferences drawn therefrom, viewed in a light most favorable to the Commonwealth as the verdict winner, support the jury's verdict beyond a reasonable doubt." **Commonwealth v. Patterson**, 91 A.3d 55, 66 (Pa. 2014) (citation omitted). "The Commonwealth can meet its burden by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances." **Commonwealth v. Watley**, 81 A.3d 108, 113 (Pa. Super. 2013) (*en banc*) (internal quotation marks and citation omitted), *appeal denied*, 95 A.3d 277 (Pa. 2014). As an appellate court, we must review "the entire record … and all evidence actually received[.]" **Id.** (internal quotation marks and citation omitted). "[T]he trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or none of the evidence." **Id.** (citation omitted). "Because evidentiary sufficiency is a question of law, our standard of review is *de novo* and our scope of review is plenary." **Commonwealth v. Diamond**, 83 A.3d

119, 126 (Pa. 2013) (citation omitted), *cert. denied,* ***Diamond v. Pennsylvania***, 135 S. Ct. 145 (2014).

Instantly, Appellant was convicted of obstructing the administration of law and resisting arrest. The statutes for those offenses provide as follows.

### § 5101. Obstructing administration of law or other governmental function

A person commits a misdemeanor of the second degree if he intentionally obstructs, impairs or perverts the administration of law or other governmental function by force, violence, physical interference or obstacle, breach of official duty, or any other unlawful act, except that this section does not apply to flight by a person charged with crime, refusal to submit to arrest, failure to perform a legal duty other than an official duty, or any other means of avoiding compliance with law without affirmative interference with governmental functions.

18 Pa.C.S.A. § 5101.

### § 5104. Resisting arrest or other law enforcement

A person commits a misdemeanor of the second degree if, with the intent of preventing a public servant from effecting a lawful arrest or discharging any other duty, the person creates a substantial risk of bodily injury to the public servant or anyone else, or employs means justifying or requiring substantial force to overcome the resistance.

*Id.* § 5104.

We first address Appellant's argument regarding his conviction for obstructing administration of law. Specifically, Appellant avers that the Commonwealth failed to provide sufficient evidence that "[his] actions were

- 6 -

done with the intent to obstruct, impair, or pervert Sergeant Lucas from effectuating the arrest of [the female juvenile]." Appellant's Brief at 15. The Commonwealth counters that Appellant committed "physical interference … as the sergeant tried to perform his official function and arrest [the female juvenile.]" Commonwealth's Brief at 10.

> Evidence that one has physically impeded a law enforcement officer from administering the law has been held sufficient to sustain a conviction under § 5101. **See Commonwealth v. Conception**, 657 A.2d 1298 ([Pa. Super.] 1995) (appellant blocked door of her apartment to prevent the police from entering to apprehend fugitive who was hiding in the shower stall); **Commonwealth v. Reed**, 851 A.2d 958, 963–64 (Pa. Super. 2004) (defendant attempted to obstruct the pathway of a uniformed police officer in the common area of an apartment house after the officer had exclaimed to the defendant: "Just let me get by and do my job."); **Commonwealth v. Love**, 896 A.2d 1276, 1284–1285 (Pa. Super. 2006) (defendant, in an attempt to interfere with the law enforcement officer who was escorting his wife from the courtroom, placed his arm across court officer's chest and attempted to push him).

> The interference need not involve physical contact with the government official as he performs his duties. **Commonwealth v. Scarpone**, 634 A.2d 1109, 1113 ([Pa.] 1993). **See also Commonwealth v. Mastrangelo**, 414 A.2d 54 ([Pa.] 1980), (upholding a § 5101 conviction based on the defendant's verbal abuse of a parking enforcement officer upon receiving a parking ticket, which then deterred the officer from subsequently performing the job).

**Commonwealth v. Johnson**, 100 A.3d 207, 214-215 (Pa. Super. 2014) (parallel citations omitted).

In this case, Sergeant Lucas testified that while he was attempting to place the female juvenile in his police car, Appellant immediately attempted to interfere with his arresting her. N.T., 5/2/14, at 16. Specifically, he testified that Appellant desperately pleaded with him not to arrest the juvenile. *Id.* at 16-17. Sergeant Lucas further testified that Appellant's conduct then escalated beyond mere pleas when he physically used his body to obstruct Sergeant Lucas's efforts to arrest the female juvenile by "trapping" Sergeant Lucas between Appellant and his police cruiser. *Id.* at 19. Appellant argues that the extent of his interference was videotaping the incident from two feet away. Appellant's Brief at 16. While Sergeant Lucas testified that Appellant did pull out a mobile phone during the incident, and that Appellant told him he was videotaping the incident, he also stated that Appellant did not remain two feet away, but rather placed Sergeant Lucas between Appellant and the police cruiser. N.T., 5/2/14, at 18-19. The trial court, as the factfinder, was permitted to reject this argument, and believe the portion of Sergeant Lucas's testimony that Appellant's actions went beyond mere pleading and videotaping. *See Watley*, *supra*. In our view, this is sufficient to sustain a conviction under Section 5101 because it "physically impeded a law enforcement officer from administering the law[.]" *Conception*, *supra*. As Appellant physically interfered by boxing Sergeant Lucas between Appellant and his vehicle, in an effort to block the completion of the arrest, the trial court was permitted to infer Appellant's intent. Based

on these considerations, Appellant's first issue on appeal does not merit relief.

In his second issue, Appellant avers that the Commonwealth failed to present sufficient evidence for the charge of resisting arrest. Specifically, Appellant argues the Commonwealth failed to show that his actions "created a substantial risk of bodily injury to the police officers effectuating the arrest." Appellant's Brief at 21.

As this Court has previously noted, "Section 5104 does not require evidence of serious bodily injury, nor does it require actual injury. Merely exposing another to the risk of such injury is sufficient to sustain a conviction under Section 5104." *In the Interest of Woodford*, 616 A.2d 641, 644 (Pa. Super. 1992); *see also Commonwealth v. Butler*, 512 A.2d 667, 673 (Pa. Super. 1986) (stating that for a conviction for resisting arrest, "[t]he fact that the officer was not injured is of no consequence[]"). It is also true that Section 5104 does not require physical contact. *See, e.g.*, *Commonwealth v. Jackson*, 907 A.2d 540, 546 (Pa. Super. 2006) (stating that a conviction under Section 5104 was proper where the defendant "continued to resist attempts to subdue him by spitting blood and saliva at [the officer]"), *appeal denied*, 932 A.2d 75 (Pa. 2007).

In this case, the trial court found the Commonwealth satisfied this element based on the following.

In this case, the evidence showed that [Appellant] initially resisted Sergeant Lucas'

- 9 -

attempts to take him into custody by pulling his arm out of the officer's grasp and pulling away from the officer. [Appellant] was also refusing to place his hands behind his back, and he was flailing his arms in a defending posture. Due to [Appellant]'s struggles, he was required to be taken to the ground in order to be subdued. It took at least two (2) officers to take [Appellant] to the ground. As he was laying on the ground, [Appellant] laid on top of his hands, refusing to put them behind him to be placed into handcuffs. Force was required to pull [Appellant]'s hands out from underneath him. It ultimately took the efforts of three (3) police officers to get [Appellant] handcuffed.

Trial Court Opinion, 10/24/14, at 10.

Upon careful review of the certified record, we conclude the Commonwealth met its burden. As the trial court notes, Officer James Niglio, who provided backup to Sergeant Lucas, testified that Appellant was actively resisting, in part, because "[h]is arms were flailing, in a … defending posture." N.T., 5/2/14, at 46. Furthermore, force was required to get Appellant to get his arms behind his back for the purpose of handcuffing them. *Id.* at 44. In fact, the force of **three** police officers was required in order to secure Appellant's compliance. *Id.* In our view, the Commonwealth's evidence was sufficient to show that Appellant's defensive behavior and actions constituted a substantial risk of bodily injury to another. *See Jackson*, *supra*; *Woodward*, *supra*; *Butler*, *supra*. Based on these considerations, we conclude Appellant's sufficiency challenge does not warrant relief. *See, e.g.*, *Commonwealth v. Clark*, 761 A.2d 190, 193 (Pa. Super. 2000) (stating that the Commonwealth provided sufficient

evidence to sustain a Section 5104 conviction where the defendant "pulled his hand away from the officer and put his hands … up in a fighting stance[, gave chase, and t]he three officers attempting to effect the arrest struggled with Appellant on the ground[]"), *appeal denied*, 771 A.2d 1278 (Pa. 2001).

Based on the foregoing, we conclude both of Appellant's issues on appeal are devoid of merit. Accordingly, the trial court's May 2, 2014 judgment of sentence is affirmed.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/4/2015

- 11 -