J-A06003-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARKISE LAYNE | : | |
| | : | |
| Appellant | : | No. 233 WDA 2023 |

Appeal from the Judgment of Sentence Entered October 25, 2022
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0002485-2021

BEFORE: LAZARUS, P.J., PANELLA, P.J.E., and BECK, J.

MEMORANDUM BY LAZARUS, P.J.: **FILED: June 26, 2024**

Markise Layne appeals from the judgment of sentence, entered in the Court of Common Pleas of Allegheny County, following his conviction for resisting arrest,[1] after a non-jury trial. After careful review, we affirm.

The trial court set forth the facts of this case as follows:

The testimony presented at the non-jury trial held on October 25, 2022, established that City of Pittsburgh [P]olice [O]fficers[ Michelle Piscitella, Seth Tessmer, John Bonacchi, and Daron Feist] were dispatched to [Layne]'s mother's house in order to respond to a domestic violence situation sometime during the evening of October 12, 2020. Upon arrival, they heard [Layne]'s mother standing in the yard screaming for help. She informed the officers that "her son was breaking up the house," and officers saw [Layne] standing on the porch. [Layne] admitted to the responding officers that he had fired a warning shot, and, when Officer Piscitella walked up onto the porch, she observed shattered glass on the porch along with two firearms located on an outdoor coffee table just to the side of [Layne].

---

[1] 18 Pa.C.S.A. § 5204.

Officer Piscitella explained to [Layne] that, due to the shattered glass, the admitted shooting[,] and the presence of the two guns, she was going to detain him until they investigated the situation further. As she attempted to detain [Layne], he said "no" and he tried yanking his arms away from the officer. At some point [] during her encounter with [Layne], Officer Piscitella observed [Layne] turn towards th[e] firearms, one of them being an AK-47[,] which w[ere both] sitting on the coffee table.

Officer Piscitella then took two open hands and tried to take [Layne's] arms behind his back to detain him again with her handcuffs. [Layne] failed to comply with repeated commands to place his hands behind his back and to relax his hands. Three other officers had to assist Officer Piscitella in her attempts to cuff and detain [Layne].

The four officers struggled to detain [Layne].[2] [Layne] kicked his legs and flailed around, which required the officers to utilize their body weight as well as a leg sweeping maneuver to take him to the ground. Officer Piscitella explained that a leg sweep is employed "when people are not cooperating and they're resisting us, we would use a technique like that to try to gain control." Even after being taken to the ground, [Layne] was still flailing at that point in time, requiring the officers to then forcibly take his hands and put them behind his back.

As a result of [Layne]'s resistance on the porch covered in shattered glass, two officers suffered non-serious wounds to their legs. Officer Piscitella testified that she had several shards of glass lodged in her left kneecap that she had to get removed at a later point in time. Officer Tessmer testified that, because they had to work around shattered glass, he had a glass shard go into his left knee resulting in [bleeding].

Ultimately, and as a direct result of [Layne]'s failure to comply with repeated commands to allow himself to be detained, it took the strength of [three] officers to take him to the ground and the force of more than one officer to place his hands behind his back and handcuff him. While [Layne] may not have intentionally struck any of the officers during the attempts to detain him, his

---

[2] Based on our review of the record, it is apparent that it took three officers to get Layne to the ground, and the assistance of a fourth officer, once he was on the ground, to place Layne in handcuffs. *See* N.T. Non-Jury Trial, 10/25/22, at 34.

flailing and kicking resulted in contact with one of the officers. As Officer Piscitella testified, "[w]hen I went to handcuff him, he flailed his arms back, took his leg and kicked it, yes. At one point he made contact when he was flailing."

Order Denying Defendant's Post-Sentence Motion, 1/25/23, at 1-4 (some quotation marks, ellipses, and internal citations omitted).

The trial court convicted Layne of resisting arrest, concluding that the evidence was sufficient to prove, beyond a reasonable doubt, that, with the intent of preventing the officers from discharging their official duties, Layne: (1) created a substantial risk of bodily injury to the responding officers, **and** (2) behaved in such a way as to justify the officers' use of substantial force to overcome his resistance. **See** Order Denying Defendant's Post-Sentence Motion, 1/25/23, at 1.

After the non-jury trial, on October 25, 2022, the court sentenced Layne to serve one year of probation. On November 4, 2022, Layne filed a post-sentence motion, challenging the sufficiency and weight of the evidence, which the court denied on January 25, 2023. Layne filed a timely notice of appeal on February 24, 2023. Both Layne and the trial court have complied with Pa.R.A.P. 1925.

On appeal, Layne presents one question for our review:

Whether [] Layne's conviction for resisting arrest can be sustained where the Commonwealth failed to prove, beyond a reasonable doubt, that he acted with the requisite intent[—]that is, [] Layne created a substantial risk of bodily injury to the police officers, or that the officers were required to employ substantial force to overcome his resistance?

Appellant's Brief, at 5.

- 3 -

Layne's claim raises a challenge to the sufficiency of the evidence. Our standard of review of such a challenge is well-established:

> A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused[] beyond a reasonable doubt. When reviewing a sufficiency claim[,] the court is required to view the evidence in the light most favorable to the verdict winner[,] giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

*Commonwealth v. Johnson*, 910 A.2d 60, 65 (Pa. Super. 2006) (citation and ellipsis omitted). The trial evidence need not preclude every possibility of innocence and the factfinder is free to believe all, part, or none of the evidence. *See Commonwealth v. Watley*, 81 A.3d 108, 113 (Pa. Super. 2013) (en banc).

> The Commonwealth can meet its burden by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact[-]finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances. It is improper for this Court to re-weigh the evidence and substitute our judgment for that of the fact-finder. Additionally, the entire record must be evaluated and all evidence actually received must be considered.

*Id.* (citations and quotation marks omitted).

A challenge to the sufficiency of the evidence attacks the adequacy of the evidence to meet each of the elements of the appellant's conviction. *See Johnson*, 910 A.2d at 65.

The Crimes Code defines the crime of resisting arrest as follows:

> A person commits a misdemeanor of the second degree if, with the intent of preventing a public servant from effecting a lawful

arrest or discharging any other duty, the person creates a substantial risk of bodily injury to the public servant or anyone else, or employs means justifying or requiring substantial force to overcome the resistance.

18 Pa.C.S.A. § 5104. Accordingly, the resisting arrest statute criminalizes two distinct types of conduct that are intended to thwart a lawful arrest or the discharge of a public servant's duties, namely: (1) the creation of a substantial risk of bodily injury to the arresting officer or anyone else **and** (2) acts or conduct justifying or requiring a substantial force to overcome. *See Commonwealth v. Soto*, 202 A.3d 80, 95 (Pa. Super. 2018); *see also Commonwealth v. Lyons*, 555 A.2d 920, 925 (Pa. Super. 1989) (resisting arrest statute includes disjunctive phrase, therefore statute criminalizes two distinct acts).

With regard to either form of proscribed conduct, we have found the resisting arrest statute "does not require the aggressive use of force such as a striking or kicking of the officer." *Commonwealth v. Miller*, 475 A.2d 145, 146 (Pa. Super. 1984). Further, the statute neither requires serious bodily injury, nor actual injury to the arresting officer. *See Lyons*, 555 A.2d at 925. "The fact that the officer was not injured is of no consequence." *Commonwealth v. Butler*, 512 A.2d 667, 673 (Pa. Super. 1986). Finally, it is beyond cavil that "it is not criminal merely to flee arrest. However, where the circumstances of the flight expose the pursuing officers to substantial danger[,] a conviction for resisting arrest is proper." *Miller*, 475 A.2d at 146. Also, it is an element of the crime that the underlying arrest must either be lawful or the public servant must be discharging a duty. *See Commonwealth*

*v. Jackson*, 924 A.2d 618, 620 (Pa. 2007) (lawful arrest is element of crime of resisting arrest); *Miller*, 475 A.2d at 147 (intent of preventing police from discharging duty of restoring order and maintaining peace element of resisting arrest).

First, with regard to creating a substantial risk of bodily injury to the arresting officer or anyone else, in *Miller*, *supra*, this Court considered a sufficiency challenge for a resisting arrest conviction. In that case, the appellant yelled to his brother that he was being arrested and struggled with multiple officers, who attempted to grab and pinion his arms, but appellant resisted by flailing his arms and by moving the upper part of his body horizontally back and forth in a rapid manner, and attempted to push through the officer to go to the aid of his brother, who was struggling with another officer. The appellant further resisted police efforts to handcuff him by straining against them with his arms and the upper part of his body, continuing to do so as the police officers attempted to place him in the rear of a police car. To get the appellant in the car, the police found it necessary to lift the appellant from the ground and physically push him into the rear of the police vehicle. At some point during the struggle, an officer received a bruise to his lower leg. *See Miller*, 475 A.2d at 146-47. This Court found this evidence sufficient to prove substantial risk of bodily injury as well as conduct requiring substantial force to overcome. *Id.*

Also, this Court previously concluded that evidence of the appellant's struggle with two deputies in the middle of a frigid stream, with a strong

current and a rocky and uneven bed is sufficient to sustain a conviction for resisting arrest because it created a substantial risk of bodily injury to the arresting officers. **See Lyons**, 555 A.2d at 925.

However, in **Commonwealth v. Eberhardt**, 450 A.2d 651 (Pa. Super. 1982), this Court reversed a resisting arrest conviction founded on conduct creating a substantial risk of bodily injury because the evidence was insufficient where, during a scuffle with three officers attempting to effectuate an arrest, furniture was overturned and one of the officers sustained a bruise on his arm. Our Court determined that the appellant's actions were only attempts to escape and not an aggressive assertion of physical force against the officers and that he only attempted to free himself from the officers' grasps and did not strike or kick anyone.[3] **Id.** at 653.

Second, with regard to whether a defendant has engaged in acts justifying or requiring a substantial force to overcome, we have previously rejected an appellant's claim that "passive resistance" did not amount to resisting arrest. **See Commonwealth v. Thompson**, 922 A.2d 926, 928 (Pa. Super. 2007) (sufficient evidence adduced at trial to sustain conviction for resisting arrest because substantial force required to overcome passive resistance of interlocked arms and legs where arresting officer testified to being "exhausted" by attempts to effectuate arrest).

---

[3] The **Eberhardt** appellant was only charged with this portion of the resisting arrest statute, and not with the creation of a substantial risk of bodily injury. **See Eberhardt**, 450 A.2d at 653.

- 7 -

In *Commonwealth v. Butler*, 512 A.2d 667 (Pa. Super. 1986), we found sufficient evidence to sustain a conviction for resisting arrest where the appellant engaged in acts justifying or requiring a substantial force to overcome, because it took the assistance of other officers to subdue him. *Id.* at 673. *See also Commonwealth v. McDonald*, 17 A.3d 1282, 1286 (Pa. Super. 2011) (concluding evidence sufficient for conviction of resisting arrest where multiple officers needed to use taser to arrest appellant); *Lyons*, 555 A.2d at 925 (evidence sufficient for conviction of resisting arrest where it took four deputies to effectuate arrest and overcome resistance). Additionally, in *Commonwealth v. Coleman*, 19 A.3d 1111 (Pa. Super. 2011), we found the evidence sufficient to sustain a conviction for resisting arrest because the appellant engaged in conduct justifying or requiring a substantial force to overcome when the officer attempted to remove the appellant's hand from his pocket, but the appellant struggled, striking the officer with his left and right shoulders, while cursing, and telling the officer to get off of him. *See Coleman*, 19 A.3d at 1118.

However, in *Commonwealth v. Rainey*, 426 A.2d 1148 (Pa. Super. 1981), this Court reversed a resisting arrest conviction when the appellant squirmed and twisted to "shake off the policeman's detaining arm," likening the altercation to a "minor scuffle" incident to an arrest. *Id.* at 1150.

In his appeal, Layne asserts that the evidence is insufficient to sustain his conviction because, in pronouncing the verdict, the court relied on evidence that was belied by the record. *See* Appellant's Brief, at 18.

Specifically, Layne asserts the record does not support the court's statements that

> there [was] basically a wrestling match taking place next to a table that contains guns that include an AK-47. Certainly[, there was] a substantial risk of bodily injury. Substantial force[ was also established where there were] four officers taking someone to the ground. Substantial force [was established], it is not like one person putting him down, four officers [] wrestled him to the ground.

*See* Appellant's Brief, at 17, quoting N.T. Non-Jury Trial, 10/25/22, at 42.

Layne argues that the court's statements are contradicted by Officer Tessmer's testimony, which was that Layne "[b]asically just fail[ed] to listen to commands that other officers would say. Put your hands behind your back, relax your hands, none of that was happening." *See* Appellant's Brief, at 18, quoting N.T. Non-Jury Trial, 10/25/22, at 34. Layne further notes that neither Officer Piscitella nor Officer Tessmer testified to being struck or kicked, and, although Officer Piscitella testified that Layne made contact while "squirming" and "flailing," she also repeatedly testified that Layne did not strike her. *See* Appellant's Brief, at 18, quoting N.T. Non-Jury Trial, 10/25/22, at 25. Moreover, Layne contends that Officer Tessmer testified that it only took "10, 20 seconds" for the officers to gain control and handcuff Layne. *See* Appellant's Brief, at 23, quoting N.T. Non-Jury Trial, 10/25/22, at 36.

Finally, Layne notes that he made no attempt to gain possession of the firearms on the porch table, and that, during the encounter with the officers, he explained that the firearms were unloaded, that he was licensed to possess them, and the license was on the table. *See* Appellant's Brief, at 8. Layne

- 9 -

also points out that he was respectful and compliant once handcuffed. *Id.* at 10. Ultimately, Layne concludes that his passive resistance was insufficient to sustain his conviction. *Id.* at 13.

Layne relies on our decisions in *Eberhardt*, *supra*, and *Rainey*, *supra*, and argues that, factually, his case is more akin to those two cases than to other decisions where our courts have found the evidence sufficient to sustain a conviction for resisting arrest. We disagree.

Here, the trial court found that the evidence was sufficient to convict Layne of resisting arrest—finding that Layne created a substantial risk of bodily injury to the arresting officer **and** employed means justifying or requiring a substantial force to overcome.

Upon our review of the record, we discern no error and conclude that there was sufficient evidence to sustain Layne's convictions under both theories.[4]

First, as to creating a substantial risk of bodily injury to the arresting officer, we conclude the evidence was sufficient to sustain Layne's conviction for resisting arrest. *See Lyons*, *supra*; *see also Miller*, *supra*. Officer Piscitella testified that there was shattered glass on the porch along with two

---

[4] As an initial matter, although not argued, we note that the officers were discharging their official duty to respond to an emergency call relating to a domestic dispute, were investigating that call as well as Layne's admission that he shot a warning shot immediately prior to the officers' arrival on scene, and, were further investigating the rightful ownership of the firearms. As such, the element requiring the underlying arrest to either be lawful or the public servant to be discharging a duty is satisfied. *See Jackson*, *supra*; *Miller*, 475 A.2d at 147.

- 10 -

firearms on the table, which posed an immediate danger and could create substantial risk of bodily injury. Both the threats of accidental discharge of the weapons and/or cuts from the broken glass created a substantial risk of bodily injury to the arresting officers. Further, the Commonwealth, as verdict winner, was entitled to an inference that the officers suffered their injuries because of Layne's resistance. Indeed, Officer Tessmer testified that because the officers "had to work around the shattered glass," he had a glass shard go into his left knee resulting in [bleeding]." N.T. Non-Jury Trial, 10/25/22, at 35. And, although officers did, in fact, suffer injuries, no injury needed to be proved to sustain Layne's conviction. **See Lyons**, 555 A.2d at 925.

Further, we note that it took the strength of three officers to get Layne to the ground, and a fourth to completely effectuate the arrest, all around shattered glass and potentially loaded firearms, and while Layne kicked and flailed about, actually making contact with Officer Piscitella. Under these circumstances, we conclude that the amount of people moving about quickly in a confined space, surrounded by the hazards of broken glass shards and potentially loaded firearms, along with Layne's resistance that required a leg sweep maneuver to overcome, as analyzed and described in greater detail below, sufficiently created a substantial risk of bodily injury to the arresting officers to sustain the conviction for resisting arrest on this basis.

Second, we similarly conclude that the evidence was sufficient to sustain Layne's conviction on the basis that he employed means justifying or requiring a substantial force to overcome. **See Butler**, **supra**; **see also Coleman**,

*supra*; *Miller*, *supra*; *Lyons*, *supra*. Officer Piscitella testified that when she observed the guns on the table and informed Layne she would detain him to investigate the situation further, he said "no" and he tried to yank his arms away from her. N.T. Non-Jury Trial, 10/25/22, at 17. Shortly thereafter, Officer Piscitella testified that she observed Layne turn towards the firearms on the porch table next to Layne. At that point, Officer Piscitella grabbed Layne and tried to take his arms behind his back to detain him with handcuffs, but Layne failed to comply with repeated commands to put his arms behind his back and relax his hands. Two additional officers were required to assist Officer Piscitella take Layne to the ground, which necessitated the officers to perform a "leg sweep," a maneuver police employ to gain control of the situation when "people are not cooperating and they're resisting us[.]" N.T. Non-Jury Trial, 10/25/22, at 29. A fourth officer also was required to intervene after Layne was taken to the ground to finally place Layne in handcuffs. As verdict winner, the Commonwealth was entitled to the inference that the forcefulness of Layne's resistance required substantial force from each of these officers where they deemed it necessary to perform a leg sweep to gain control. Also, as verdict winner, the Commonwealth was entitled to the inference that substantial force was required and used because shards of broken glass became lodged in Officer Piscitella's kneecap, such that the glass needed to be removed at a later time, as opposed to merely creating a surface wound.

Finally, to the extent that Layne suggests he only passively resisted, we note that such "passive" resistance has previously been found to satisfy the statutory evidentiary requirements of the crime of resisting arrest. **See Thompson**, **supra**. Moreover, with regard to Layne's claims that he made no attempt to gain possession of the firearms on the porch table and did not engage in conduct creating a substantial risk of bodily injury to the officers, or requiring substantial force to overcome, those arguments are not reviewable in a challenge to the sufficiency of the evidence. A sufficiency challenge based on a mere dispute with the fact-finder's credibility determinations, or discrepancies in witness accounts, warrants no relief. **Commonwealth v. Randall**, 758 A.2d 669, 674 (Pa. Super. 2000) ("It is within the province of the fact[-]finder to determine the weight to be accorded each witness's testimony and to believe all, part, or none of the evidence introduced at trial."); **see also Commonwealth v. Griffin**, 65 A.3d 932, 939 (Pa. Super. 2013) (argument that goes to credibility of witness testimony is not attack on sufficiency of evidence and instead is challenge to weight that evidence should have been afforded).

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: <u>6/26/2024</u>